2007-NMSC-043

164 P.3d 57

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**David NEAL, Defendant–Petitioner.**

**No. 30,005.**

Supreme Court of New Mexico.

June 27, 2007.

178

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Respondent.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

## OPINION

SERNA, Justice.

{1} Alamogordo Department of Public Safety Officer Neil LaSalle stopped David Neal ("Defendant") for a cracked windshield. Officer LaSalle asked for Defendant's consent to search the truck for drugs and weapons, but Defendant refused consent. Believing he had reasonable suspicion, Officer LaSalle detained Defendant's truck for approximately ten minutes to await a drug dog to perform a perimeter sniff of the truck, while allowing Defendant to leave the scene. Defendant called his father, James Neal ("Neal"), the owner of the truck, who arrived at the scene and subsequently gave written consent to search the truck. The search revealed a handgun and methamphetamine.

{2} Defendant moved to suppress the evidence as the fruit of an illegal search and seizure, claiming protection under both the Fourth Amendment to the United States Constitution and article II, section 10 of the New Mexico Constitution. The district court granted Defendant's motion, finding that reasonable suspicion supported the expansion of the traffic stop, but that the ten-minute detention of the truck was too long and required probable cause, which the court found lacking. The Court of Appeals reversed in a split memorandum opinion, concluding that Officer LaSalle had reasonable suspicion to expand the traffic stop to investigate drug activity, and that this reasonable suspicion supported the ten-minute detention of the truck to await the drug dog, based on the recent Court of Appeals case of *State v. Robbs*, 2006–NMCA–061, 139 N.M. 569, 136 P.3d 570, *cert. denied*, 2006–NMCERT–005, 139 N.M. 568, 136 P.3d 569. *State v. Neal*, No. 25,864, memorandum op. (Ct.App. Aug. 16, 2006).

{3} We conclude that the Court of Appeals erred in holding that Officer LaSalle had reasonable suspicion to detain Defendant's truck beyond that necessary to issue a citation for the cracked windshield and that Neal's subsequent consent to search the truck was tainted by the original police illegality. Accordingly, we reverse the Court of Appeals and hold that the evidence should have been suppressed.

## I. FACTS

{4} At approximately 10:00 a.m. on July 31, 2004, Officer LaSalle, in uniform and driving a marked patrol car, observed a truck in front of a house that was under investigation for drug activity. Defendant was in the driver's seat, and a man was leaning into the truck through the driver's side window. Although Officer LaSalle did not recognize either person when he first observed them, he was aware that the house was the subject of an ongoing drug investigation. Several individuals with criminal backgrounds, including Jeff Horton ("Horton"), were known to live at and frequent the house. Defendant, however, was not among the persons associated with the house.

{5} Based on the interaction at the truck, Officer LaSalle believed that he had observed a drug transaction, although he could not see the two individuals' hands, nor could he hear what they were saying. He, therefore, intended to approach the truck to talk to the two men, but before he could, the man leaning into the truck walked back into the house, and Defendant drove away. Officer LaSalle thus decided to follow the truck in his patrol car and observed that it had a cracked windshield. He then initiated a traffic stop for obstruction of driver's view/vehicle in unsafe condition. Upon approaching the truck, Officer LaSalle recognized Defendant, whom he knew had prior drug-related and assault convictions.

{6} Officer LaSalle obtained Defendant's driver's license, registration, and insurance. He ran a wants and warrants check and was advised to proceed with caution in dealing with Defendant because Defendant might be armed and dangerous. In addition, Officer LaSalle was informed that a back-up officer was on the way because of Defendant's prior criminal record.

{7} Officer LaSalle asked Defendant about the identity of the man with whom he was talking when parked in front of the house under investigation and learned that it was Horton. Horton was under investigation for drugs, and Officer LaSalle knew that Horton had been involved in other criminal activity. Officer LaSalle described Defendant as nervous and becoming agitated during this exchange. He said Defendant's hands were very fidgety, Defendant avoided eye contact and his questions, and Defendant appeared as though he wanted to leave. Officer LaSalle returned Defendant's documents and issued a citation for the cracked windshield.

{8} Officer LaSalle realized from examining the truck's registration that it belonged to James Neal, Defendant's father, and he did not know at that time whether Defendant had permission to drive the vehicle. Nevertheless, Officer LaSalle asked for Defendant's consent to search the truck for drugs and weapons, but Defendant denied consent. Officer LaSalle told Defendant that he was free to stay or leave, but that the truck would be held until a drug dog arrived to perform a perimeter sniff of it. Defendant left to find a pay phone.

{9} Officer LaSalle believed that he had reasonable suspicion to detain the truck to conduct the canine sniff based upon his observations of Defendant prior to and during the stop, including his observations of the two men at the truck; his belief that a drug transaction had taken place; Defendant's nervous, fidgety, and agitated demeanor; Defendant's desire to leave; and Officer LaSalle's prior personal knowledge of Defendant's and Horton's criminal history.

{10} Within approximately ten minutes, Border Patrol Officer Jimmy Ross arrived with his drug dog. The dog alerted to the presence of drugs without entering the vehicle but then jumped into the open window of the truck, without prompting, apparently due to the strong odor of drugs. Thereupon, Officer LaSalle left the truck under the observation of another officer and went to obtain a search warrant for the truck.

{11} Shortly after Officer LaSalle left the scene, Defendant's father, James Neal, the owner of the truck, arrived at the scene in response to a phone call from Defendant. According to Defendant's suppression motion and Officer Ross's and Neal's testimony at the suppression hearing, Neal consented to the search after having observed the drug-sniffing dog jump in and out of the truck, and after having been told that a search warrant was in progress. The State characterized the events differently, i.e., that before Officer LaSalle could obtain the warrant, the officers still at the scene called and told him that he should return because Neal had given verbal consent to search the truck. The district court found that while Officer LaSalle was on his way to obtain the warrant, Neal arrived at the scene, gave his verbal consent to search the truck, and subsequently signed a written consent form. The subsequent search of the truck revealed a loaded firearm and a substance that tested as methamphetamine.

{12} The district court found that the truck had been illegally detained and thus granted Defendant's motion to suppress the evidence collected during the search. In explaining its decision, the court noted that it was "hesitant to put too much weight on the reputation/history of the people/residence involved in this case, although he knows they are important factors for the officer on the beat and probably properly so," and that "[i]t is not illegal to lean in a vehicle[,] and there may be innocent reasons for doing so." The court found that Officer LaSalle had reasonable suspicion to expand the scope of the traffic stop, request consent to search the vehicle, and investigate further. However, the court found that the ten-minute detention of the truck, while waiting for the drug dog to arrive, was too long and required probable cause. Therefore, the detention of the truck was illegal, and the court suppressed the evidence.

{13} In a split memorandum opinion, the Court of Appeals reversed the district court's grant of the motion to suppress and remanded the case. *Neal*, No. 25,864, memorandum op. at 1, 8. First, the Court of Appeals held that Defendant failed to preserve his argument under the New Mexico Constitution and thus only considered his rights under the Fourth Amendment to the federal Constitution. *Id.* at 3. The Court of Appeals then concluded that Officer LaSalle had reasonable suspicion to expand the duration of the traffic stop to investigate drug activity, and that this reasonable suspicion supported the ten-minute detention of the truck to await the drug dog, based on the recent Court of Appeals case, *State v. Robbs,* 2006–NMCA– 061, 139 N.M. 569, 136 P.3d 570. *Neal,* No. 25,864, memorandum op. at 6–8. Judge Kennedy dissented, concluding that "more hunch and conjecture support[ed] the detention than we should allow" because "[t]he officer's knowledge that people were going in and out of the house and Defendant's stopping in front of it to talk with a resident does not support the individualized, articulable suspicion required to justify a detention." *Id.* at 9 (Kennedy, J., dissenting).

{14} The State urges us to affirm the Court of Appeals, contending that Officer LaSalle had reasonable suspicion to detain the truck, based on his observations of Defendant, which was sufficient to justify the detention. In addition, the State argues that Neal's subsequent consent justified the search of the truck and was purged of any taint. Defendant asks us to reverse the Court of Appeals, contending that Officer LaSalle lacked both probable cause and reasonable suspicion to expand the scope of the valid traffic stop into a drug investigation and to detain the truck and that Neal's subsequent consent was tainted by the illegal detention of the truck. We reverse the Court of Appeals for the reasons that follow.

## II.  STANDARD OF REVIEW

{15} We engage in a two-part review of a district court's decision regarding a motion to suppress: "The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Baca,* 2004–NMCA–049, ¶ 11, 135 N.M. 490, 90 P.3d 509 (citing *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d

1315, 1316 (1995); *State v. Werner*, 117 N.M. 315, 316–17, 871 P.2d 971, 972–73 (1994); *State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994)). With respect to the factual review, we do not sit as trier of fact, recognizing that the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility. *State v. Vandenberg*, 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (quoting *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964). Therefore, we review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings. *Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

## III. THE FOURTH AMENDMENT PROTECTS DEFENDANT, AND THUS WE DECLINE TO ADDRESS HIS CLAIM UNDER ARTICLE II, SECTION 10 OF THE NEW MEXICO CONSTITUTION

{16} The Fourth Amendment to the United States Constitution and article II, section 10 of the New Mexico Constitution make analogous provision for the protection of the people against unreasonable searches and seizures. For the past fifteen years, article II, section 10 has been construed to provide broader protections than the Fourth Amendment. *State v. Granville*, 2006–NMCA–098, ¶ 14, 140 N.M. 345, 142 P.3d 933 (citing the long line of New Mexico cases construing article II, section 10 more broadly than the Fourth Amendment in a variety of contexts), *cert. granted*, 2006–NMCERT–008, 140 N.M. 423, 143 P.3d 185. Indeed, in *State v. Gomez*, we reiterated our consistently expressed "strong preference for warrants," 1997–NMSC–006, ¶ 36, 122 N.M. 777, 932 P.2d 1, and expanded the protection afforded New Mexico motorists from unreasonable searches and seizures by announcing the rule that "a warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances," thus rejecting the federal rule. *Id.* ¶ 39; *see also State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 15, 130 N.M. 386, 25 P.3d 225.

{17} The first issue Defendant raises is whether his claim under article II, section 10 of the New Mexico Constitution was properly preserved. The Court of Appeals held that Defendant failed to preserve it because he "d[id] not make any argument, other than in arguing that he preserved the issue, supporting his position that the New Mexico Constitution affords him greater protection than the Federal Constitution." *Neal*, No. 25,864, memorandum op. at 3. Inasmuch as we hold Officer LaSalle lacked reasonable suspicion to detain the truck following the valid traffic stop, we resolve this case based solely on the Fourth Amendment to the federal Constitution. *See Cardenas–Alvarez*, 2001–NMSC–017, ¶ 7, 130 N.M. 386, 25 P.3d 225 (declining to examine defendant's state constitutional claim "[i]f the federal Constitution affords [d]efendant the protection he seeks"). Therefore, we find it unnecessary to engage in a preservation analysis and proceed to analyze Defendant's claim under the Fourth Amendment alone. *See Robbs*, 2006–NMCA–061, ¶ 10, 139 N.M. 569, 136 P.3d 570 (deciding that the issue presented was one of reasonable suspicion and thus "analyz[ing] the circumstances here only under the Fourth Amendment of the United States Constitution," where "[d]efendant provide[d] no argument that the New Mexico Constitution provides greater protections for issues involving reasonable suspicion").

## IV. OFFICER LASALLE LACKED REASONABLE SUSPICION TO DETAIN THE TRUCK FOLLOWING THE VALID TRAFFIC STOP

{18} The Fourth Amendment to the United States Constitution "prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)); *see also Robbs*, 2006–NMCA–061, ¶ 11, 139 N.M. 569, 136 P.3d 570. Our central inquiry under the Fourth Amendment is reasonableness, which involves two

questions: " 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Robbs*, 2006–NMCA–061 ¶ 11, 139 N.M. 569, 136 P.3d 570 (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868).

▇▇▇▇ {19} With respect to determinations of reasonable suspicion, we engage in a de novo review, as the decision of whether police conduct was objectively reasonable "extends beyond fact-finding." *Vandenberg*, 2003–NMSC–030, ¶ 19, 134 N.M. 566, 81 P.3d 19. It is thus

> the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context. We conduct this review de novo along with our review of any inferences the district court may have drawn from its factual findings. In performing this de novo review, we look at the totality of the circumstances.

*Id.* (internal quotation marks and citations omitted).

▇▇▇▇ {20} Under Fourth Amendment standards, a police officer making a lawful stop "may conduct an investigation reasonably related to the circumstances that gave rise to the officer's reasons for the stop." *State v. Williamson*, 2000–NMCA–068, ¶ 8, 129 N.M. 387, 9 P.3d 70.

> The officer may expand this investigation if the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot.... The officer's investigation, of course, is limited to a reasonable inquiry that is designed to satisfy the officer's reasonable suspicions. Moreover, the officer's investigation of any reasonable suspicion must proceed diligently.

*Id.* (internal quotation marks and citations omitted). Following a valid stop and reasonably related investigation, further detention requires reasonable suspicion of criminal activity. *Cardenas–Alvarez*, 2001–NMSC–017, ¶ 20, 130 N.M. 386, 25 P.3d 225; *State v. Lowe*, 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539.

▇▇▇▇ {21} It is well-established that "[r]easonable suspicion is measured by an objective standard, in which the court examines the totality of the surrounding circumstances, to determine whether the officer acted reasonably in expanding the scope of inquiry." *State v. Romero*, 2002–NMCA–064, ¶ 11, 132 N.M. 364, 48 P.3d 102; *see also State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a *particular individual*, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (emphasis added). By assessing the totality of the circumstances, we recognize that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744 (quoting *Cortez*, 449 U.S. at 418, 101 S.Ct. 690). However, this does not mean that "[u]nsupported intuition and inarticulate hunches are ... sufficient" to constitute reasonable suspicion justifying a detention. *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (quoting *Cobbs*, 103 N.M. at 626, 711 P.2d at 903); *see also Vandenberg*, 2003–NMSC–030, ¶ 21, 134 N.M. 566, 81 P.3d 19; *Urioste*, 2002–NMSC–023, ¶ 10, 132 N.M. 592, 52 P.3d 964.

▇▇▇▇ {22} It is undisputed that Officer LaSalle's traffic stop of Defendant for a cracked windshield was valid. Thus, Officer LaSalle had the authority to investigate the cracked windshield and seek identification, registration, and insurance from Defendant, which he did. The core issue with which we are then confronted is whether Officer LaSalle had individual, particularized reasonable suspicion with respect to Defendant to detain the vehicle further to await a drug dog sniff. That is, did Officer LaSalle have reasonable suspicion that drugs would be found in the truck? The Court of Appeals found *Robbs*, 2006–NMCA–061, 139 N.M. 569, 136 P.3d 570, directly on point and applied its analysis to conclude that Officer LaSalle had reasonable suspicion both to expand the traffic stop into a drug investigation and to detain the vehicle. *Neal*, No. 25,864, memorandum op. at 4–8.

{23} However, as Judge Kennedy ably pointed out in his dissent, *Robbs* is readily distinguishable from the instant case. *Neal,* No. 25,864, memorandum op. at 9 (Kennedy, J., dissenting). *Robbs* involved a very specific tip to police about a drug transaction that would be taking place. 2006–NMCA–061, ¶ 2, 139 N.M. 569, 136 P.3d 570. Based on the tip, police conducted surveillance of the identified residence, spotted the vehicle described, at approximately the time described, and stopped the vehicle. *Id.* ¶¶ 2–3. While the officers told the defendant she was free to leave, which she did, they detained the truck for thirty-five to forty minutes to wait for a drug dog to perform a sniff of the truck. *Id.* ¶ 4. The Court held that the officers had reasonable suspicion to make the stop based upon the tip and that it was reasonable to detain the truck in order to wait for the canine sniff. *Id.* ¶ 31; *see also State v. De Jesus–Santibanez,* 119 N.M. 578, 581–82, 893 P.2d 474, 477–78 (Ct.App.1995) (finding reasonable suspicion to stop a vehicle that matched a specific and reliable "be-on-the-lookout" bulletin and detain the vehicle for approximately twenty minutes). In the instant case, the Court of Appeals, relying on *Robbs,* held that the much shorter ten-minute detention of Defendant's truck was equally reasonable. *Neal,* No. 25,864, memorandum op. at 7–8. However, unlike in *Robbs,* there was no specific tip with respect to Defendant. Indeed, the only legitimate basis for the stop was the cracked windshield. We, therefore, reject *Robbs* as controlling the instant case. The core issue is whether Officer LaSalle had specific and particularized information with respect to Defendant to constitute reasonable suspicion that drugs would be found in the vehicle and to, therefore, justify its detention beyond the time necessary to issue a citation for the cracked windshield. We are convinced that he did not. The following cases are illustrative.

{24} In *State v. Prince,* police had been investigating the defendant for possible drug involvement for several months, and, on the night he was stopped, police had received information from a drug task force agent that the defendant might be traveling into New Mexico from Texas and might be in possession of a controlled substance. 2004– NMCA–127, ¶ 2, 136 N.M. 521, 101 P.3d 332. However, the agent did not believe he had enough information to justify a stop, so he contacted the local police department to see if patrol deputies could develop probable cause to stop the defendant. *Id.* Police subsequently stopped the defendant for speeding and told him that he had been under investigation for manufacturing and trafficking methamphetamine. *Id.* ¶¶ 3–4. They frisked him for weapons and later obtained his consent to investigate for drugs. *Id.* ¶¶ 4–5.

{25} Even though the defendant was personally under investigation for drugs and despite the specific tip with respect to him and his movements, the Court of Appeals held reasonable suspicion was lacking to detain the vehicle beyond the valid traffic stop, stating:

> Guilt by association and generalized suspicions are insufficient grounds upon which to base an investigatory detention. In the absence of specific and particularized incriminating information about the criminal activity that defendant is or is about to engage in, generalized suspicions and mere corroboration of innocent activity, even if it is not readily available to the general public, is insufficient to create reasonable suspicion for an investigatory detention.

*Id.* ¶ 17; *see also State v. Eli L.,* 1997– NMCA–109, ¶ 13, 124 N.M. 205, 947 P.2d 162 (holding that a child-defendant's mere identification as a gang member and his making a "gang whistle" and "sagging" his pants in a manner associated with gang members was not sufficient to constitute individualized reasonable suspicion to search the child). The Court, therefore, held the investigatory detention for drugs following the traffic stop unlawful and further held that this police illegality tainted the defendant's subsequent consent and any evidence discovered thereafter. *Prince,* 2004–NMCA–127, ¶¶ 21–22, 136 N.M. 521, 101 P.3d 332.

{26} *State v. Graves* provides further guidance. 119 N.M. 89, 888 P.2d 971 (Ct.App. 1994). In *Graves,* the Court of Appeals held that "mere presence does not justify the arrest or detention of a person, other than

the resident, at a residence lawfully being searched." *Id.* at 94, 888 P.2d at 976 (internal quotation marks omitted). The police were executing a valid search warrant that named to be searched "any persons and/or vehicles which can be shown to be involved in drug dealing (purchasing or selling)." *Id.* at 91, 888 P.2d at 973. In addition to the residents of the house, police detained and handcuffed non-residents, including the defendant, for at least thirty minutes, despite any shown connection with the drugs and paraphernalia discovered on the premises or any other grounds to suspect such a connection. *Id.* at 91, 94, 888 P.2d at 973, 976.

{27} The Court concluded that no circumstances existed to give rise to reasonable suspicion to believe the defendant was involved in criminal activity and no articulable reason to detain him. *Id.* at 94, 888 P.2d at 976. In holding that mere presence was insufficient to establish reasonable suspicion to detain a non-resident, the Court reasoned that "recognizing presence alone as sufficient to detain a person found on premises subject to a search warrant would provide unlimited and unreviewable discretion. Such discretion, we believe, would betray the underlying principles of the Fourth Amendment." *Id.* *Contra State v. Sanchez,* 2005–NMCA–081, ¶¶ 3, 13, 137 N.M. 759, 114 P.3d 1075 (finding reasonable suspicion to detain and search all present at a fight/party/disturbance where a stabbing had occurred and drugs and weapons were found), *cert. denied,* 2005–NMCERT–006, 137 N.M. 766, 115 P.3d 229. In the instant case, Defendant never entered the house under investigation, and Officer LaSalle could only see that an occupant of the house was leaning into Defendant's truck. He could not see what, if anything, they were doing, aside from talking, and could not hear what they were saying. If reasonable suspicion was found lacking in *Prince,* where the defendant himself was under investigation, and in *Graves,* where the defendant was actually present *inside* the house being searched, we are loath to find it here.

{28} As the Court of Appeals stated in *Prince,* "Officers may not use a lawful stop to fish for evidence of other crimes where there is insufficient reason to detain a defendant, beyond the purpose of the initial detention." 2004–NMCA–127, ¶ 19, 136 N.M. 521, 101 P.3d 332. Likewise, Officer LaSalle could not use his valid traffic stop of Defendant for a cracked windshield to detain the truck longer than necessary in order to fish for evidence of a drug transaction. We acknowledge that reasonable suspicion " 'can arise from wholly lawful conduct.' " *Robbs,* 2006–NMCA–061, ¶ 26, 139 N.M. 569, 136 P.3d 570 (quoting *Urioste,* 2002–NMSC–023, ¶ 10, 132 N.M. 592, 52 P.3d 964). In addition, we recognize that our reasonable suspicion determination requires us to assess the totality of the circumstances and "precludes ... [a] divide-and-conquer analysis" in which we view each individual factor or circumstance in a vacuum. *See Arvizu,* 534 U.S. at 274, 122 S.Ct. 744. However, we are still compelled to address the factors upon which Officer LaSalle based his assessment of reasonable suspicion that drugs would be found in the truck: Defendant's stopping in front of a house under investigation; talking to Horton, a convicted felon; becoming nervous when stopped by the police; wishing to leave; and denying consent to search the truck.

{29} We have never adopted " 'a rule equating simple nervousness with reasonable suspicion.' " *Vandenberg,* 2003–NMSC–030, ¶ 31, 134 N.M. 566, 81 P.3d 19 (quoted authority omitted). Indeed, " '[i]t is common knowledge that most citizens ... whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.' " *Id.* (quoting *United States v. Millan–Diaz,* 975 F.2d 720, 722 (10th Cir.1992)). Thus, viewed in the context of Officer LaSalle's other observations, Defendant's fidgety and nervous demeanor and desire to leave did not suffice to create reasonable suspicion. *See id.* (noting that nervousness is to be expected when confronted with law enforcement and that it does not alone create reasonable suspicion); *State v. Van Dang,* 2005–NMSC–033, ¶ 16, 138 N.M. 408, 120 P.3d 830 (holding reasonable suspicion existed to expand valid traffic stop where defendant, driving a rental van, was not named in the rental contract, had a story inconsistent with passenger regarding

their travel plans and defendant's alleged permissive use of the van, and defendant's nervousness).

{30} Likewise, Defendant's mere association with a convicted felon like Horton, who was under surveillance in an ongoing drug investigation, was insufficient to create reasonable suspicion of Defendant, especially where as here, Officer LaSalle did not even know the identities of the two men when he observed them. *See State v. Harbison*, 2006–NMCA–016, ¶ 21, 139 N.M. 59, 128 P.3d 487, *aff'd*, 2007–NMSC–016, 141 N.M. 392, 156 P.3d 30. Moreover, Defendant's denial of consent to search the truck "is not a probative fact of guilt, suspicion, or dangerousness." *Vandenberg*, 2003–NMSC–030, ¶ 46, 134 N.M. 566, 81 P.3d 19. We consider Defendant's refusal of consent to be "a neutral act which neither incriminated nor exculpated" him, and it does not figure into our reasonable suspicion calculus. *Id.* ¶ 47.

{31} Officer LaSalle was indeed "entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants." *See Arvizu*, 534 U.S. at 276, 122 S.Ct. 744. However, taking into account his training and experience, it was not reasonable for him to infer from the circumstances and his observations that Defendant had been involved in a drug transaction and that he, therefore, had reasonable suspicion to detain his vehicle, even for ten minutes, to await a drug dog sniff. Defendant's innocent conduct and the surrounding circumstances, viewed together and indulging the factual inferences drawn by Officer LaSalle, do not constitute the type of individualized, specific, articulable circumstances necessary to create reasonable suspicion that Defendant himself was involved in criminal activity and thus did not provide a basis upon which Officer LaSalle could lawfully detain Defendant's vehicle. Rather, as Judge Kennedy asserted in his dissent, these circumstances smack more of the type of conjecture and hunch we have rejected in the past as insufficient to constitute reasonable suspicion. *Neal*, No. 25,864, memorandum op. at 9 (Kennedy, J., dissenting); *see also Jason L.*, 2000–NMSC–018, ¶ 22, 129 N.M. 119, 2 P.3d 856; *Prince*, 2004–

NMCA–127, ¶ 17, 136 N.M. 521, 101 P.3d 332; *Graves*, 119 N.M. at 94, 888 P.2d at 976. Any other conclusion would eviscerate the very protection of individual rights and liberties the Fourth Amendment was designed to create and which this Court has taken an oath to uphold.

{32} Based on the foregoing, we hold that Officer LaSalle lacked the requisite reasonable suspicion to detain Defendant's truck to await a canine sniff.

## V. NEAL'S SUBSEQUENT WRITTEN CONSENT TO SEARCH THE TRUCK WAS TAINTED BY THE PRIOR ILLEGAL DETENTION OF THE TRUCK

{33} Having concluded that the expansion of the traffic stop into a drug investigation and the subsequent ten-minute detention of the truck violated Defendant's rights under the Fourth Amendment, we now consider whether, under the exclusionary rule, we must suppress the evidence obtained as a result of the consensual search of the truck. *See Prince*, 2004–NMCA–127, ¶ 20, 136 N.M. 521, 101 P.3d 332. "For evidence to be admissible, consent must be both voluntary and purged of all taint from a prior illegality." *Id.; see also State v. Taylor*, 1999–NMCA–022, ¶ 27, 126 N.M. 569, 973 P.2d 246. The voluntariness of Neal's consent is not at issue. We, therefore, turn to the Fourth Amendment taint analysis to determine whether Neal's consent was an exploitation of the prior police illegality. The State contends that any illegality in Officer LaSalle's conduct was vitiated by Neal's voluntary written consent to search the truck. Defendant counters that Neal's consent was tainted and, accordingly, cannot support the search.

{34} For evidence obtained following police illegality, but with voluntary consent, to be admissible:

there must be a break in the causal chain from the [illegality] to the search. [T]he proper question in evaluating whether a consent was tainted by prior illegality is whether there was [sufficient] attenuation between the [illegality] and the consent to search. In deciding whether the consent

is sufficiently attenuated from the Fourth Amendment violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct.

*Taylor*, 1999–NMCA–022, ¶ 28, 126 N.M. 569, 973 P.2d 246 (internal quotation marks and citations omitted).

{35} In the instant case, a direct causal relationship exists between the illegal expansion of the traffic stop and the subsequent detention of the truck and Neal's consent to search. *See Prince*, 2004–NMCA–127, ¶ 21, 136 N.M. 521, 101 P.3d 332. Neal, the truck's owner and Defendant's father, arrived at the scene in response to a call from Defendant immediately following Officer LaSalle's illegal detention of the truck. Neal's presence at the scene to give consent was thus a direct result of the original police illegality. Indeed, Neal testified at the suppression hearing that he personally witnessed some of the police illegality when he arrived to see the drug dog jumping in and out of the truck before he had even granted consent.[1] No attenuation, temporal or otherwise, existed between the police illegality and Neal's consent. *See id.* ¶ 21 (holding there was no attenuation and thus tainted consent where officer conducted an improper investigatory detention immediately before seeking consent to search); *State v. Bedolla*, 111 N.M. 448, 456, 806 P.2d 588, 596 (Ct.App. 1991) (holding there was no attenuation where defendants gave consent for search after being stopped based on uncorroborated tip that they were dealing cocaine). Therefore, we conclude that Neal's consent to search the truck flowed directly from, and was an exploitation of, the illegal expansion of the traffic stop and the subsequent detention of the truck. *See Prince*, 2004–NMCA–127, ¶ 21, 136 N.M. 521, 101 P.3d 332. Accordingly, we conclude that Neal's consent was tainted and was thus invalid to support the search of the truck, and all evidence collected as a result should have been suppressed.

## VI. CONCLUSION

{36} We hold, under the Fourth Amendment to the United States Constitution, that Officer LaSalle lacked reasonable suspicion to detain the truck beyond the time necessary to issue a citation for the cracked windshield. In addition, Neal's subsequent consent to search the truck was tainted by the original police illegality and was, therefore, insufficient to validate the search. The evidence obtained as a result was the fruit of an illegal search and seizure and, therefore, should have been suppressed. Accordingly, we reverse the Court of Appeals.

{37} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, and PAMELA B. MINZNER, Justice.

PETRA JIMENEZ MAES, Justice (dissenting).

RICHARD C. BOSSON, Justice (dissenting).

BOSSON, Justice (dissenting).

{38} I respectfully dissent. The majority opinion concedes that the original traffic stop was legitimate. *Supra*, ¶ 22. The majority does not dispute that Officer LaSalle could ask Defendant questions once having made a lawful stop. *See id.* ¶¶ 28, 30. What the majority opinion does not abide is any further detention of the vehicle to await the drug dog. *Id.* ¶ 22 ("The core issue with which we are then confronted is whether Officer LaSalle had individual, particularized reasonable suspicion with respect to Defendant to detain the vehicle further to await a drug dog sniff.").

{39} Significantly, the majority does not appear to attack the specific length of the detention. *Supra*, ¶ 32. Without ever balancing "the government's justification for the

---

1. While the voluntariness of Neal's consent is not at issue, we, like Judge Kennedy, are troubled by the "legal issues apart from matters within the purview of the case before us" that were created by the fact that "[t]he truck was seized and the dog entered the truck before consent to search was given" and before "[t]he truck's owner ... arrived and gave his consent." *Neal*, No. 25,864, memorandum op. at 9 (Kennedy, J., dissenting).

detention, the character of the intrusion on the individual, the diligence of the police in conducting the investigation, and the length of the detention," *State v. Robbs,* 2006–NMCA–061, ¶ 21, 139 N.M. 569, 136 P.3d 570, the majority appears to conclude that no amount of investigatory detention for drugs, no matter how brief, could be justified based on what Officer LaSalle knew and had observed. Taken literally, I suppose that even if the officer had a drug sniffing canine in his car or if it were one block away, not even that amount of *de minimis* detention would be tolerable. I am compelled to this conclusion because of where the majority opinion takes its stand. It does not quibble with the reasonableness of this particular detention; it says that no amount of detention, not sixty minutes and not sixty seconds, can be justified because the officer lacked reasonable suspicion for any extra detention related to drugs. With respect, I do not agree. Under the federal constitution, as opposed to the New Mexico Constitution, such a minimal detention of a vehicle for the purpose of a drug dog sniff is justified when the officer has reasonable, articulable suspicion based on no more than what was known to Officer LaSalle here.

{40} I begin by examining the facts which do not appear to be in dispute. Officer LaSalle saw Defendant parked outside a house under investigation for drug activity. Defendant was talking with a man who came from that same house, and the two were participating in what looked like, in the officer's experience, a drug deal. His suspicion aroused, the officer wanted to talk to them both, but Defendant drove away. Officer LaSalle then followed Defendant's car and conducted his traffic stop, which all agree was legitimate. At that time he specifically recognized Defendant as a person with a criminal record, including drug transactions. In undertaking his customary wants and warrants computer check, the officer learned that Defendant may well be dangerous, dangerous enough that another officer was sent over to assist. Then, in the course of further questioning, the officer learned that the man seen talking to Defendant at the suspected drug house, Horton, with whom Defendant may have had a drug transaction, was, to no

surprise, one of the very men specifically under investigation for drug activity. Mr. Horton also had a criminal history related to drugs. Parenthetically, Defendant was also acting nervous and agitated throughout the stop.

{41} Based on all these facts and observations, the officer was in fact suspicious of Defendant, that his car contained drugs. He believed that a drug dog, conducting a sniff of the car's exterior, would confirm his suspicions and give him the probable cause he needed for a search warrant. Accordingly, he released Defendant, kept the car, waited ten minutes for the drug dog to arrive, and, upon the drug dog alerting, obtained the consent of the owner to conduct an interior search which produced contraband.

{42} In my mind, I cannot think that any reasonably well-trained police officer would not be suspicious under the totality of these circumstances. Remember that we are not being asked to approve a full-fledged search, or any further detention of Defendant who was free to go and did leave the scene. This makes a difference. As our Court of Appeals noted in *Robbs,* 2006–NMCA–061, ¶ 21, 139 N.M. 569, 136 P.3d 570, we must "balance the government's interest in preventing the use and distribution of methamphetamine against Defendant's right to be free from official investigation through the use of a drug dog." The majority opinion makes no mention that under established federal law, "the government's interest in deterring methamphetamine use ... substantially outweighs the minimal intrusion on Defendant's liberty through the use of a drug dog." *Id.* ¶ 22 (citing *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). Moreover, the length of the detention and the degree the defendant's freedom of movement is restricted are both important factors in determining whether the seizure complies with Fourth Amendment requirements. *See State v. Werner,* 117 N.M. 315, 318–19, 871 P.2d 971, 974–75 (1994) (holding that the detention violated the Fourth Amendment based on its length and because defendant's freedom of movement was severely limited).

{43} Based, in part, on this careful balance, we repeatedly tell the police to investigate first before jumping to a search and an arrest, to proceed incrementally with caution so as to confirm or deny suspicions before proceeding to the next step. It seems to me that is exactly what Officer LaSalle did under these circumstances. We have encouraged the use of drug dogs because they do not intrude into the privacy of the interior; they detect the air outside in the public domain, just not detectable to humans. Drug dogs employed in the manner of this case are a cautious, incremental step in terms of their impact upon the Fourth Amendment. They require only a small amount of time, and if they fail to alert, the vehicle is free to go. *See Robbs,* 2006–NMCA–061, ¶ 29, 139 N.M. 569, 136 P.3d 570. But it may take some time to transport the dog to the scene, in this case ten minutes. That amount of time is not unreasonable, and the majority does not disagree. *See id.* ¶ 30 (citing state and federal cases that have upheld similar detentions while awaiting a drug dog).

{44} The Court of Appeals majority found this short detention amply supported by reasonable suspicion, citing *Robbs.* It is difficult to say what the district court thought, since the judge incorrectly applied a standard of probable cause instead of reasonable suspicion. Perhaps we, as an appellate court, should remand to that judge to determine, in the first instance, whether Officer LaSalle had reasonable suspicion, as opposed to probable cause, for that ten-minute detention. If all we do here is insert our view of the evidence for that of the Court of Appeals, then I doubt we have advanced the law on such an important subject as the Fourth Amendment.

{45} My disagreement with the majority, however, is not just over our collective view of the evidence. I am concerned that we are not following the law of the Fourth Amendment, as articulated by the United States Supreme Court over the past several years and then more recently by federal courts, particularly the Tenth Circuit. Here, we are not articulating the meaning of our New Mexico Constitution where we are free to diverge. This is the same Fourth Amendment for us all. I fear we risk being criticized for inserting our own view of what we think Fourth Amendment case law ought to be, when our role is to follow and apply what the Supreme Court and others have already said about the Fourth Amendment under similar circumstances, and indeed what the Supreme Court would very likely say in this very instance.

{46} The majority opinion makes reference to *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), for the proposition that we will not engage in a " 'divide-and-conquer analysis,' " *supra,* ¶ 28, but then the opinion seems to go on to do just that. In *Arvizu,* the Supreme Court made clear that we must do more than analyze each individual component of what the officer observed to see whether each component is equally capable of a benign explanation as a suspicious one. 534 U.S. at 274, 122 S.Ct. 744 (stating that the Ninth Circuit erred by examining each factor viewed in isolation, even though each may have been " 'innocent in itself,' . . . taken together, they 'warranted further investigation' ") (quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). We are to examine the totality of the circumstances, as seen through the eyes of a reasonable, well-trained police officer and giving due deference to how a reasonable police officer, not five private citizens or even five judges, might objectively interpret the totality of the circumstances, whether or not each individual component is capable of an innocent explanation. *Id.* at 277, 122 S.Ct. 744 (noting that the test is to consider "the totality of the circumstances" while giving "due weight to factual inferences drawn by the law enforcement officer").

{47} Rather than undertaking this form of analysis, the majority addresses each factor individually, noting how each one can be seen as lawful conduct. *Supra,* ¶¶ 29–32. It is fine to view each factor individually to determine the weight to be given to each factor. However, in the end, the question is not whether the defendant was engaging in lawful conduct, but rather whether under the totality of the circumstances the *"detaining*

*officer* has a 'particularized' and objective basis for suspecting legal wrongdoing." *United States v. Santos,* 403 F.3d 1120, 1134 (10th Cir.2005) (quoting *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744) (emphasis added); *see also id.* (holding that reasonable suspicion existed under the totality of the circumstances test even though "[t]his set of facts, taken individually, might not mean much to ordinary observers"). In doing so the court must "defer to the 'ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" *Id.* at 1124 (quoted authority omitted). The court does not do so blindly, of course; such deference is always subject to a standard of objective reasonableness. But neither do we get to substitute our version of suspicion for that of the officer. *See Arvizu,* 534 U.S. at 276, 122 S.Ct. 744 ("To the extent that a totality of the circumstances approach may render appellate review less circumscribed by precedent than otherwise, it is the nature of the totality rule.").

{48} Aside from its passing reference to *Arvizu,* the majority opinion does not discuss recent opinions from our own Tenth Circuit which factually are more on point with our own case and which uphold a drug dog detention similar to what occurred in this case. In employing Fourth Amendment analysis, the Tenth Circuit gives much greater weight than the majority opinion to officer observation. *See, e.g., United States v. Bradford,* 423 F.3d 1149, 1157–58 (10th Cir.2005); *Santos,* 403 F.3d at 1133–34. Other circuits are similar. *See United States v. Davis,* 430 F.3d 345, 354–55 (6th Cir.2005) (holding, based largely on police observation regarding drug investigation, the initial seizure while awaiting a drug dog was reasonable); *United States v. Yang,* 345 F.3d 650 (8th Cir.2003) (holding that detention while awaiting drug dog was reasonable based primarily on officer observation). The analysis in *Santos* is particularly helpful as there, like here, a traffic stop was made and the officer detained the defendant's vehicle until a dog arrived to sniff the vehicle. 403 F.3d at 1122–24. The Tenth Circuit found that reasonable suspicion existed, even though it all began with a mere traffic stop, based on the officer's observations, the answers produced

by the defendant when questioned, and the fact that the defendant had a prior criminal history. *Id.* at 1133–34. The court's holding was based in large part on its deference to the "'ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" *Id.* at 1124 (quoting *United States v. McRae,* 81 F.3d 1528, 1534 (10th Cir.1996)). *Santos* is an excellent example of a court affirming a brief drug dog detention, though somewhat reluctantly, perhaps being of a mind to decide differently if they could speak their own mind, but nonetheless following applicable Fourth Amendment precedent, principally *Arvizu,* to uphold the detention as not unreasonable. *Santos,* 403 F.3d. at 1124–25 (laying out the Supreme Court's standard of reviewing, then noting how it is that standard that must be applied in Fourth Amendment cases).

{49} Just as in *Santos,* the reasonable suspicion in this case arose from officer observation and a past criminal history. Officer LaSalle was not observing any two people talking on a street; he was observing two men, later determined to have drug-related criminal records, conversing outside a suspected drug house and engaging in what he thought was a drug deal. *See Santos,* 403 F.3d at 1132 (noting that "in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus"). The point is not whether there might be a benign explanation for this behavior. Obviously, it is not illegal to converse on a street corner even if one has a criminal record. According to the Supreme Court, however, the principal question we are to ask is whether it would be unreasonable for any well-trained police officer merely to be suspicious and initiate a criminal investigation for drugs, taking into account all of the officer's observations, considered cumulatively, and giving due deference to the officer's training and experience. This opinion does not give officer training and experience its due. *See Arvizu,* 534 U.S. at 273, 122 S.Ct. 744 ("This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"

(quoted authority omitted)). I believe most well-trained, conscientious officers would be suspicious of drug activity under these circumstances, and appropriately so. But it is not my opinion that counts; it is what the federal constitution, as presently interpreted by the Supreme Court, appears to require.

{50} Instead of discussing federal precedent on this topic, the majority relies primarily on our own New Mexico case law interpreting the same Fourth Amendment. But I do not think it does so correctly.

{51} *Robbs*, of course, is closely on point as the Court of Appeals majority determined in this very case, reasoning that if a thirty-five minute detention of the vehicle while awaiting the drug dog was reasonable, so too would be a ten-minute detention for the same purpose. *Robbs* was preceded by a specific tip that the driver would be carrying drugs, a point which is absent from our case. But to be reliable, tips must carry such detailed corroborating evidence. *See Robbs*, 2006–NMCA–061, ¶¶ 13–15, 139 N.M. 569, 136 P.3d 570. Our case is based not on a mere tip, but the officer's observations. The majority opinion does not explain why the personal observations of a trained officer would be less reliable than a tip, anonymous or otherwise.

{52} The *Robbs* analysis is helpful because of the federal analysis it engages in as discussed above. *Supra*, ¶ 42. However, instead of applying a similar analysis the majority draws an analogy to *State v. Prince*, 2004–NMCA–127, 136 N.M. 521, 101 P.3d 332, and *State v. Graves*, 119 N.M. 89, 888 P.2d 971 (Ct.App.1994). *Supra*, ¶¶ 24–27. *Graves* involved the detention of an individual, not a vehicle, who was present at a house that was being lawfully searched. 119 N.M. at 94, 888 P.2d at 976. The Court of Appeals held that mere presence without any other circumstances giving rise to reasonable suspicion was not enough to justify the detention under the Fourth Amendment. *Id.* I agree. But in the case before us Officer LaSalle articulated far more reasons than mere "presence" for wanting to investigate Defendant's car for drugs. Additionally, I do not find *Graves* on point because, as noted above, in the traditional Fourth Amendment balance of the government interest versus the level of intrusion there are significant differences between this case and *Graves*. In *Graves* the individual was detained and handcuffed, while here only the *vehicle* was detained for a short period of time to await a canine sniff. *See Robbs*, 2006–NMCA–061, ¶ 29, 139 N.M. 569, 136 P.3d 570 ("Defendant's freedom of movement was not severely restricted.... Defendant was told she was free to leave, and she did so.").

{53} I also do not find much help in *Prince*, 2004–NMCA–127, ¶ 2, 136 N.M. 521, 101 P.3d 332. There, the police were acting on an anonymous tip and had not seen anything on their own, unlike Officer LaSalle in this case who based everything on his own observations. The police in *Prince* did not simply expand the stop by detaining the vehicle briefly to await a canine sniff. Instead, the police immediately removed the defendant from the car and performed a full search, despite his cooperation, which is a far cry from the incremental actions of Officer LaSalle here. *See id.* ¶ 4. The court held, appropriately, that there was no firm basis to expand the traffic stop into a drug investigation. *Id.* ¶ 19.

{54} These New Mexico cases are not as helpful as the majority opinion finds them to be. More importantly, the majority fails to undertake the proper federal analysis necessary when we are to determine whether the Fourth Amendment's protections were violated.

{55} For these reasons I respectfully dissent.

I CONCUR PETRA JIMENEZ MAES, Justice.