This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 28,911**

**RICKY ESPARZA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Judge.**

Defendant appeals from the district court's judgment and sentence convicting

him of possession of methamphetamine with the intent to distribute and challenges the

district court's denial of his motion to suppress. We must determine whether the district court erred by ruling that the officer's issuance of a traffic citation converted the traffic stop into a consensual encounter, which permitted the officer to inquire about drugs and weapons, matters unrelated to the traffic violation. During the appellate briefing process, this Court published an opinion addressing a nearly identical issue in *State v. Figueroa*, 2010-NMCA-048, 148 N.M. 811, 242 P.3d 378, *cert. granted*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. Applying *Figueroa*, we reverse the district court's order denying suppression.

**BACKGROUND**

While on routine campus patrol for UNM at around midnight, Officer Trujillo observed a vehicle being driven without its headlights on. The officer made a U-turn to follow the vehicle and engaged the emergency equipment on his marked police car to initiate a traffic stop. The driver of the vehicle, Defendant, pulled over and lowered his driver's side window upon the officer's approach. In the vehicle with Defendant were a female and a child. Officer Trujillo asked for Defendant's driver's license, registration, and proof of insurance. Officer Trujillo testified that in the middle of the traffic stop, Defendant began to appear nervous and popped his head out of the driver's side window several times to look behind the officer.

While the officer was checking Defendant's documentation in his patrol car, he observed Defendant's continued nervous behavior, popping his head out of the window as though he was looking behind the patrol car. Concerned for his safety in the event that someone might be approaching to assault the officer or run him down, Officer Trujillo called an additional unit for assistance before he issued Defendant the citation. The officer did not discover any warrants on Defendant or anything improper about his documentation. After Officer Trujillo completed the traffic citation, an additional officer arrived, Officer Miller. Officer Trujillo spoke with Officer Miller and had him stationed behind Trujillo's patrol car as backup. The officers approached Defendant's vehicle, Officer Trujillo on the driver's side and Officer Miller on the passenger's side.

Officer Trujillo handed Defendant the traffic citation through the open window. Officer Trujillo advised Defendant that he "was done and . . . asked him if he had anything else in the vehicle that [he] should be aware of; anything involving weapons, alcohol, [or] narcotics." Defendant responded in the negative, and Officer Trujillo asked Defendant for consent to search the vehicle. Officer Trujillo had Defendant exit the vehicle and walk to the patrol car, where Defendant read and signed the consent form. Defendant was then handcuffed and placed in the backseat. The passengers

were under surveillance by Officer Miller during this time and removed from the vehicle for the search.

During the search, the officers found a substance in a lockbox in the trunk and a bag tucked in between the front seats, which tested positive for methamphetamine, glass pipes, and a scale. Defendant was charged with possession of methamphetamine with the intent to distribute, conspiracy to commit possession of a controlled substance with the intent to distribute, and possession of drug paraphernalia. Defendant moved to suppress the evidence on the grounds that the officer's inquiry into the presence of weapons and drugs was unrelated to the purpose of the stop, not supported by reasonable suspicion, and therefore expanded the scope of the investigation and detention without a legal basis. Defendant argued that because there was insufficient attenuation between the illegal expansion of the stop and his consent to search, the consent was invalid and the evidence must be suppressed.

At the suppression hearing, the State asserted the following two alternative arguments: either (1) the officer had sufficient reasonable suspicion to ask about drugs and weapons or (2) once the officer issued the citation to Defendant, the traffic stop was completed and the encounter became consensual. The State argued that, in the latter event, the officer could inquire about anything. In response, Defendant argued there was no reasonable suspicion to support the additional questioning and

4

the stop did not quickly de-escalate into a consensual encounter because no reasonable person would have felt free to leave in this situation. The district court and the parties discussed the inconsistency with which Fourth Amendment jurisprudence addresses an officer's questioning a defendant about matters unrelated to the stop after it has ended, recognizing that the issue had not been addressed in New Mexico. Defendant argued that, in a broader view of the issue, the New Mexico Constitution should afford more protection for this warrantless search.

In the district court's order denying the motion to suppress, it characterized the case law applicable to this type of police encounter as a "balkanization" of the Fourth Amendment and chose to apply a line of cases that it believed supported the State's position that once the traffic citation was issued, the stop ended and the encounter became consensual. It ruled that Defendant was free to leave, but instead of leaving, he gave valid consent for the search. Defendant entered a conditional plea of guilty, reserving the right to appeal from the district court's denial of his motion to suppress.

**DISCUSSION**

**Standard of Review**

"The standard of review for a suppression ruling is whether the trial court correctly applied the law to the facts when the facts are viewed in the light most favorable to the prevailing party. Under this standard, the trial court's factual

determinations are subject to a substantial evidence standard of review, and its application of the law to the facts is subject to de novo review." *State v. Snell*, 2007-NMCA-113, ¶ 7, 142 N.M. 452, 166 P.3d 1106 (citation omitted). Particularly in search and seizure cases, the inquiry whether the search or seizure was reasonable is a mixed question of fact and law as to which legal conclusions based on evaluative judgments predominate and we therefore turn to de novo review. *State v. Flores*, 1996-NMCA-059 ¶ 6, 122 N.M. 84, 920 P.2d 1038; *State v. Attaway*, 117 N.M. 141, 145-46, 870 P.2d 103, 107-08 (1994).

**The Parties' Arguments**

Defendant's brief in chief argues in the alternative under the Federal and New Mexico Constitutions. He asserts that the officer's separate line of questioning into drugs and weapons expanded the scope of the traffic stop without justification and, therefore, was not lawful under the Fourth Amendment or, alternatively, the New Mexico Constitution provides greater protection and required the officer to have a specific, articulable suspicion that Defendant possessed drugs and weapons in order to inquire about them, regardless of whether the questioning extended the traffic stop. On the day Defendant filed his brief in chief, this Court issued an opinion in *Figueroa*, which addressed a similar issue, and decided that the police encounter did not become

consensual after the officer returned the defendant's identification and told him he was free to leave. *See Figueroa*, 2010-NMCA-048, ¶¶ 19, 26-30.

The State's answer brief attempts to distinguish *Figueroa* and argues that United States Supreme Court case law has rejected Defendant's arguments under the Fourth Amendment, which is the framework under which we should view *Figueroa*. The State also argues that Defendant did not sufficiently develop and preserve his argument for a broader state constitutional protection, as was found by the district court, which focused its ruling on the Fourth Amendment. Defendant's reply brief argues that although the opinion in *Figueroa* is highly fact-dependent and contains factual differences, there is no genuine distinction between the cases and the result should be the same. We agree with Defendant.

While other state and federal jurisdictions may employ different approaches to this issue, all purportedly under the Fourth Amendment, this Court has directly addressed this issue under the Federal Constitution and has done so in a manner we believe is consistent with our state's Fourth Amendment case law. *See Figueroa*, 2010-NMCA-048, ¶¶ 19, 26-30. *See generally State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922 ("An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis,

makes inquiries about other criminal activity unrelated to the traffic violation."). We are not persuaded that the out-of-state cases the State relies upon are sufficiently similar in their facts or issues to control the outcome of this case or to require that we revisit the analysis in *Figueroa*. As a result, we apply our Fourth Amendment case law as it currently exists.

**Analysis**

In *Figueroa*, officers were present at a residence to investigate a reported domestic problem. 2010-NMCA-048, ¶¶ 2-3. The defendant was a passenger in a truck that pulled up to the residence. *See id.* ¶ 3. The driver remained in the truck, left the engine running, and the defendant went inside the house. *See id.* The officer testified that this behavior was consistent with a drug transaction. *See id.* When the defendant exited the home, an officer approached him, asked why he was at the home, and requested the defendant's and the driver's identification. *See id.* ¶ 4. The officer's warrant check revealed nothing, so the officer returned their information and advised them that they could leave. *See id.* Then the officer asked the defendant if he was in possession of anything illegal and asked if he could pat him down. *See id.* ¶ 5. The officer testified that the defendant was free to leave at that time, but that the officer wanted to check him for weapons. *See id.* The officer placed the defendant in a secure position, patted him down, and asked the defendant if he could remove

8

what he felt in the defendant's pocket. *See id.* The defendant consented, and the officer removed cigarettes, change, and a bindle of drugs. *See id.*

In *Figueroa*, the State asserted the same argument it raises in the current case—that the stop became a consensual encounter when the officer returned the defendant's identification and ceased the initial investigation because the defendant was free to leave at that time, but he voluntarily consented to a search. *See id.* ¶¶ 19, 28. We held that the distinct line of questioning outside of the domestic matter was an expansion of the stop and required a separate showing of reasonable suspicion of other criminal activity. *See id.* ¶¶ 22-27. We rejected the State's argument that the encounter became consensual when the officer told the defendant he was free to leave and then immediately continued to question him. *See id.* ¶ 31 (characterizing the consensual nature of the continued interaction as "a fiction" and describing "the reality . . . that even if a person is told he or she is free to leave, most people will not feel free to walk away when continued police questioning seamlessly follows"). We determined that there was not sufficient attenuation between the illegal questioning and the defendant's consent and reversed the district court's denial of suppression. *See id.* ¶¶ 35-36.

Similarly, in the present case, the officer's inquiry into Defendant's possession of drugs and weapons was not reasonably related to the circumstances that justified

the stop, and it was not otherwise supported by reasonable suspicion that developed during the course of the stop. *See State v. Duran*, 2005-NMSC-034, ¶¶ 23, 35-36, 138 N.M. 414, 120 P.3d 836 (holding that a stop may be reasonable where it is justified at its inception and where the officer's inquiries are reasonably related to the circumstances which justified the stop or where the officer develops a reasonable suspicion to justify an expanded investigation). Officer Trujillo testified that Defendant had all the proper information, no outstanding warrants, and was never hostile or aggressive during the stop. An inquiry into Defendant's possession of drugs and weapons during a traffic stop constitutes a continuing detention, which must be supported by reasonable suspicion. *See id.* ¶ 41 ("Questions about drugs or weapons refer to a criminal act beyond what the officer stopped the car for in the first place. Thus, they constitute a separate and distinct line of questioning apart from and outside the scope of the initial justification for the stop that require a showing of reasonable suspicion of other criminal activity."); *State v. Lowe*, 2004-NMCA-054, ¶ 12, 135 N.M. 520, 90 P.3d 539 (holding that an officer can only inquire about drugs and alcohol if he has reasonable suspicion that the motorist is under the influence or in possession of same); *State v. Taylor*, 1999-NMCA-022, ¶¶ 20-25, 126 N.M. 569, 973 P.2d 246 (holding that questioning about the presence of drugs, alcohol, and weapons in the course of a routine traffic stop represents an expansion beyond the generally

permissible range of inquiry, which must be supported by reasonable suspicion); *In re Forfeiture of ($28,000.00)*, 1998-NMCA-029, ¶¶ 5, 14, 124 N.M. 661, 954 P.2d 93 (holding that inquiry about the presence of weapons in a vehicle immediately following the officer obtaining the requested documents from the defendant).

In the present case, the officer had only a generalized suspicion based solely on Defendant's nervous behavior, looking behind the officer, to justify his continued investigation beyond the initial traffic stop. This falls short of the reasonable suspicion required for a continued investigative detention. *See State v. Neal*, 2007-NMSC-043, ¶¶ 28-29, 142 N.M. 176, 164 P.3d 57 (holding that although reasonable suspicion may arise from lawful conduct, "[w]e have never adopted a rule equating simple nervousness with reasonable suspicion" (internal quotation marks and citation omitted)). In the absence of some other justification for the inquiry, the officer's inquiry was tantamount to an impermissible fishing expedition. In fact, the State does not argue on appeal that the further inquiry into drugs and weapons was justified by reasonable suspicion.

Instead, as we have stated, the State's brief argues that this secondary inquiry was consensual in nature and therefore outside of the Fourth Amendment. In *Figueroa*, we emphasized that the transformation of a seizure to a consensual encounter is a highly fact-specific issue, which requires a consideration of the totality

11

of the circumstances and turns on whether a reasonable person would have believed he or she was free to leave. 2010-NMCA-048, ¶¶ 29, 33. Where the alleged "transition between detention and a consensual exchange [is] so seamless that the untrained eye may not notice that it has occurred," the officer's actions may not transform a seizure into a consensual encounter. *Id.* ¶ 30 (internal quotation marks and citation omitted). We stated that a Fourth Amendment encounter may be converted to a consensual one where the officer is careful to clearly establish a true transformation. *See id.* ¶¶ 32-33. In *Figueroa*, it was important to this Court that during the encounter "there was no break in time or location, no request for permission to continue with questioning, and nothing indicating that the seizure had changed to anything remotely consensual." *Id.* ¶ 32.

The current case had a similarly seamless transition from a traffic stop for a headlight violation to an investigation into drugs and weapons. In fact, unlike the officer in *Figueroa*, who told the defendant he was free to leave, the officer in this case simply stated he was "done" and immediately asked Defendant if there were drugs or weapons in the vehicle. *See id.* ¶ 30 ("While an officer's statement that a suspect is free to go is a relevant consideration, it does not automatically make the encounter consensual thereafter."). There was no time lapse between the traffic stop and the further investigation, no request for permission for the continued questioning,

and nothing more to indicate that the encounter became consensual. *See id.* ¶ 32. Further, another officer arrived at the scene, also with his emergency lights engaged, and the officers stood on either side of the vehicle as Officer Trujillo returned Defendant's information and began questioning into the presence of drugs and weapons. Indeed, the officers increased the show of police authority for Officer Trujillo to issue the citation and continue his questioning, at the time when the State argues that the encounter became consensual. With these facts, we fail to see how the officer's vague statement that he was "done" could transform this seizure into a truly consensual encounter. *See id.* ¶ 32. To hold otherwise, it appears that we would break from the fact-dependent Fourth Amendment inquiry into reasonableness and voluntariness and adopt a nearly bright-line rule that the return of a defendant's information and issuance of a citation automatically ends a seizure and begins a consensual encounter. *See, e.g.*, *Funderburg*, 2008-NMSC-026, ¶¶ 11-16; *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74.

Lastly, we hold that Defendant's consent did not supply a valid basis for the search and seizure of contraband from the vehicle in light of the officer's illegal inquiry. For evidence to be admitted upon consent to a search following unlawful police conduct, that consent must be sufficiently attenuated to purge the taint of the prior illegality. *See Neal*, 2007-NMSC-043, ¶ 33. "The burden is . . . on the

13

prosecution to prove that there are intervening factors which prove that the consent was sufficiently attenuated from the illegal stop." *Figueroa*, 2010-NMCA-048, ¶ 34 (internal quotation marks and citation omitted). In determining the sufficiency of any attenuation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *See id.* ¶ 34.

As we explained, Officer Trujillo requested permission to search the vehicle immediately after asking about the presence of drugs and weapons. As a consequence, the illegal expansion of the stop was in very close temporal proximity to the consent, without any intervening circumstances. Further, the purpose of the officer's request for permission to search was to verify Defendant's answers to the improper preceding inquiry. Under the circumstances, Defendant's consent was not sufficiently attenuated to purge the taint of the officer's prior illegality. *See, e.g.*, *id.* ¶ 35 (holding that consent was tainted where no attenuation, temporal or otherwise, existed between the illegality and the consent); *State v. Prince*, 2004-NMCA-127, ¶ 21, 136 N.M. 521, 101 P.3d 332 (holding there was no attenuation where the officer conducted an improper investigatory detention immediately before seeking consent to search); *Taylor*, 1999-NMCA-022, ¶ 29 (holding that there was no attenuation, and hence consent was tainted, where the officer asked improper questions immediately

14

before asking for consent to search, no other events occurred to separate the consent and the questions, and the purpose of requesting consent to search was to verify answers to the improper questions).  Because Defendant's consent was tainted and invalid to support the officers' search of his vehicle, all evidence discovered as a result should have been suppressed.

**CONCLUSION**

For these reasons, we reverse the district court's denial of Defendant's motion to suppress the evidence.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**

15