IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-012

Filing Date: March 9, 2011

Docket No. 31,891

STATE OF NEW MEXICO,

  Plaintiff-Petitioner,

v.

VICTOR GONZALES,

  Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
ROBERT MERLE SCHWARTZ, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Gorence & Oliveros, P.C.
Robert J. Gorence
Albuquerque, NM

for Respondent

OPINION

CHÁVEZ, Justice.

{1} The State appeals a district court order suppressing methamphetamine evidence based on its conclusion that a traffic stop of Defendant Victor Gonzales was an unconstitutional pretext to a narcotics investigation. During the suppression hearing, Detective Carlos Gallegos, who had been monitoring Defendant's activities during the day in question, testified that he coordinated the traffic stop of Defendant for a window tint violation by asking Officer Thomas Griego to make the stop and arranging for a canine unit to be present at the time of the stop. Detective Gallegos wanted the vehicle stopped to follow up on information he received from a confidential informant that sometime that

1

afternoon or evening, Defendant would be transporting a large amount of methamphetamine south of Albuquerque. The detective referred to the stop as pretextual and testified that he did not believe he had reasonable suspicion or probable cause to stop Defendant for a narcotics investigation. A search of the vehicle pursuant to a search warrant revealed a large quantity of methamphetamine.

**{2}** Defendant filed a motion to suppress the evidence contending, among other things, that the stop was pretextual in violation of the New Mexico Constitution. The trial judge announced his intention to deny the motion in a letter concluding that the patrol officer who stopped Defendant did have reasonable suspicion to stop Defendant for a window tint violation, and therefore, under *Whren v. United States*, 517 U.S. 806 (1996), the stop was constitutional. The trial judge noted that whether a pretextual stop violates the New Mexico Constitution was at the time a matter of first impression and offered to certify the question for an interlocutory appeal. However, on the same date as the letter ruling, the Court of Appeals issued its Opinion in *State v. Ochoa* (*Ochoa III*), 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143 (op. filed Nov. 3, 2008), holding that a pretextual traffic stop violates Article II, Section 10 of the New Mexico Constitution if the real purpose for the stop is not supported by reasonable suspicion or probable cause, and the officer would otherwise not have stopped the vehicle. *Ochoa III*, 2009-NMCA-002, ¶ 40. The trial court reconsidered its letter ruling sua sponte and entered an order suppressing the evidence, relying on *Ochoa III*. The Court of Appeals affirmed.

**{3}** We interpret *Ochoa III* to require a determination whether the real reason for the stop is supported by objective evidence of reasonable suspicion. If the answer is yes, the stop is constitutional. Because *Ochoa III* had not been published at the time of the evidentiary hearing and the trial court did not conduct such an analysis, we reverse and remand for a hearing consistent with *Ochoa III*.

**BACKGROUND**

**{4}** On July 20, 2006, Detective Gallegos, who was assigned to the Valley Narcotics Unit of the Albuquerque Police Department, asked Officer Griego to stop a certain gold-colored Chevy Tahoe if he agreed that its window tint violated the law. He also instructed the officer to conduct the stop as he normally would while other officers conducted a narcotics investigation. In addition, Detective Gallegos arranged for Detective Daniel Campbell, who operated a canine unit, to be present at the time of the stop. The three officers followed Defendant for approximately one mile before Officer Griego stopped Defendant near the intersection of Coors and Blake in Albuquerque at approximately 8:45 p.m. The narcotics dog was walked around the exterior of the vehicle, which had two open doors, and alerted to the presence of narcotics. Defendant refused to consent to a search of his vehicle. Detective Campbell left the scene and obtained a warrant to search the vehicle, where methamphetamine was eventually found.

**{5}** Defendant was indicted for trafficking methamphetamine contrary to NMSA 1978,

2

Section 30-31-20 (2006), and conspiracy to commit trafficking of methamphetamine, contrary to NMSA 1978, Section 30-28-2 (1979). Defendant was also cited for a window tint violation, but the citation was later voluntarily dismissed by the police because Defendant was being prosecuted on felony charges. Defendant filed a motion to suppress the evidence, arguing, among other things, that the traffic stop was pretextual, in violation of his rights under the New Mexico Constitution.

{6}     During the suppression hearing, Detective Gallegos testified that on July 20, 2006, a confidential informant called and told him that an individual named Victor Gonzales would be transporting a large amount of methamphetamine south out of Albuquerque that afternoon or evening. The informant also told Detective Gallegos the name of the street on which he believed Victor Gonzales resided.

{7}     Armed with this information, Detective Gallegos conducted a background investigation and discovered a booking slip photograph taken after the misdemeanor arrest of a man named Victor Gonzales. The detective also set up a surveillance operation of Defendant's residence. At approximately 4:00 p.m., he visually identified a suspect who matched the booking slip photograph of Victor Gonzales. The suspect arrived in a white Mustang, parked in the driveway, and entered the residence. Shortly thereafter, a gold-colored Chevy Tahoe was seen pulling out of the garage. Detective Gallegos was unable to determine the identity of the Chevy Tahoe's driver due to the vehicle's dark window tint. Other officers on the detective's team followed the Chevy Tahoe to a local car wash, where one of them initiated an innocuous conversation with the driver and confirmed that his name was Victor. The suspect then drove the Chevy Tahoe back to the residence, parked in the garage, and drove off in the white Mustang. The detective followed as the suspect drove the Mustang to a second residence several miles to the north. Four men came out of the second residence to meet the suspect. Two of them got into the Mustang while the other two remained on the street conducting what the detective believed to be "some sort of countersurveillance." The three men in the Mustang returned to the suspect's residence and pulled into the garage. A short time later, the Chevy Tahoe was again seen backing out of the garage, and Detective Gallegos followed as it proceeded south on Coors Boulevard. The detective asked uniformed Patrol Officer Griego to stop the Chevy Tahoe for a window tint violation near the intersection of Coors and Blake and arranged for a canine unit to be present.

{8}     During the evidentiary hearing, while attempting to clarify the reason for the stop, the trial judge asked Detective Gallegos, "[s]o in your estimation, based on the narcotics investigation and the surveillance that day, you didn't feel you had enough reasonable suspicion to pull the vehicle over, absent the tint violation?" Detective Gallegos answered:

> I just wanted to -- yes. I mean, I felt it was still kind of a thin investigation
> up to that point, I didn't feel like I had any reasonable suspicion or probable
> cause. I mean, everything was falling in order with what the informant had
> told me, but I didn't want to violate his rights by conducting a car stop

3

without him doing anything wrong. . . . So we decided do [sic] conduct a pretextual stop with a traffic violation and then as a pretextual stop occurred, to begin a narcotics investigation at that point.

**{9}** The trial judge wrote a letter to the attorneys advising them that he was "denying the Defendant's Motion to Suppress Physical Evidence based on *Whren vs. U.S.*, 517 U.S. 806 (1996) and *State vs. Ochoa* [*Ochoa I*], [2006-NMCA-131,] 140 N.M. 573[, 144 P.3d 132] (2006)." He emphasized that the Court of Appeals in *Ochoa I* never reached the issue of a pretextual stop, which meant to the trial judge that whether a pretextual stop violates the New Mexico Constitution remained an issue of first impression. Three days later the trial judge wrote to the attorneys and announced that because the Court of Appeals had issued an Opinion in *Ochoa III*, holding that pretextual stops violate the New Mexico Constitution, he was going to suppress the evidence. The trial judge stated, "[b]ecause the traffic stop of Mr. Gonzales was admittedly pretextual, the evidence found in the motor vehicle is suppressed. The Court commends the investigating police officer's candor in this case."

**{10}** On appeal, the Court of Appeals affirmed in an unpublished Memorandum Opinion, concluding that the trial court was correct because "the officer testified that the real reason for the stop was pretextual." *State v. Gonzales*, No. 29,297, slip op. at 9 (N.M. Ct. App. Jul. 29, 2009). We granted the State's petition for writ of certiorari to determine whether the trial court correctly applied the Court of Appeals analysis in *Ochoa III*. We conclude that the trial court did not analyze whether the real reason for the stop, i.e., a narcotics investigation, was objectively supported by reasonable suspicion. Because this is a necessary requirement of *Ochoa III*, we reverse and remand to the trial court.

## *OCHOA III* REQUIRES A DETERMINATION THAT THE UNRELATED MOTIVE FOR A STOP IS NOT SUPPORTED BY REASONABLE SUSPICION BEFORE A STOP IS CONSIDERED PRETEXTUAL

**{11}** In *State v. Ochoa* (*Ochoa II*), 2008-NMSC-023, ¶ 22, 143 N.M. 749, 182 P.3d 130, we remanded the case to the Court of Appeals with instructions "to determine whether the stop was pretextual and, if so, whether article II, section 10 prohibits pretextual stops." *Id.* On remand, the Court of Appeals acknowledged that the question of whether pretextual stops violate the New Mexico Constitution was a matter of first impression. *Ochoa III*, 2009-NMCA-002, ¶ 1. The Court began by recognizing that "the Fourth Amendment of the United States Constitution does not protect citizens against pretextual stops," citing to the United States Supreme Court opinion in *Whren*. *Id.* ¶ 8. The Court next described the widespread criticism of *Whren*, *id.* ¶¶ 13-19; noted this Court's historical willingness to afford greater protection from unreasonable searches and seizures, including automobiles, under the New Mexico Constitution, *id.* ¶¶ 22-24; and chose to depart from *Whren* and other federal constitutional law because the Court found "the federal analysis unpersuasive and incompatible with our state's distinctively protective standards for searches and seizures of automobiles," *id.* ¶ 12.

4

**{12}** The Court of Appeals defined a pretextual stop as "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *Id.* ¶ 25. To assist trial courts in determining whether an unconstitutional pretextual stop has occurred, the Court of Appeals outlined a three-step approach. First, the State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional. *Id.* ¶ 40. Second, if the State satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. *Id.* Third, if the defendant satisfies the burden, there is a presumption of a pretextual stop, and the State must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive. *Id.*

**{13}** In this case, the trial judge was persuaded that the officer's candor in admitting that the stop was pretextual was sufficient to conclude that the stop was unconstitutionally pretextual. Looking at the evidence in the light most favorable to Defendant, who prevailed, *see State v. Van Dang*, 2005-NMSC-033, ¶ 14, 138 N.M. 408, 120 P.3d 830, we conclude that there was sufficient evidence to support a finding that the stop would not have occurred except for the unrelated motive to conduct a narcotics investigation. Detective Gallegos basically testified that he orchestrated the stop of Defendant by Patrol Officer Griego, who otherwise would not have been aware of Defendant's presence. Detective Gallegos testified that he followed Defendant as Defendant traveled south on Coors. Detective Gallegos then had to pull over to allow Officer Griego to drive up and conduct the stop on Defendant. Detective Gallegos had also directed a canine unit to be present at the moment Defendant was stopped.

**{14}** What is not clear is whether the trial judge also concluded that Detective Gallegos lacked a reasonable suspicion to stop Defendant for the unrelated motive--a narcotics investigation. Under *Ochoa III*, this analysis is a necessary prerequisite to concluding that a pretextual stop is unconstitutional. Detective Gallegos did testify, in response to questions from the trial judge, that he did not believe he had reasonable suspicion to stop Defendant for a narcotics investigation, despite his surveillance of Defendant and the information he received from a confidential informant who previously had provided him with accurate information in unrelated cases.

**{15}** In analyzing whether an officer has reasonable suspicion, the trial court must look at the totality of the circumstances, and in doing so it may consider the officer's experience and specialized training to make inferences and deductions from the cumulative information available to the officer. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). However, an officer's subjective belief about whether the officer had a reasonable suspicion is not conclusive. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("Police officers possess reasonable suspicion when they are 'aware of specific articulable facts' that,

5

judged objectively, 'would lead a reasonable person to believe criminal activity occurred or was occurring.'" (citation omitted)). *Cf. State v. Prince*, 2004-NMCA-127, ¶ 21, 136 N.M. 521, 101 P.3d 332 ("The . . . agent used a lawful traffic stop to perform an unrelated drug investigation when he himself knew there was no reasonable suspicion to detain Defendant for such purpose.").

**{16}** In this case, Defendant had the burden to prove that the real motive for the stop was not supported by a reasonable suspicion under *Ochoa III*. During oral argument, defense counsel gave this Court a litany of questions he would have explored with Detective Gallegos had he known that the issue was whether there was reasonable suspicion to stop Defendant for a narcotics investigation. The State relied on *Whren* and argued that the reasonable suspicion to investigate the narcotics case was supported by the canine alert, which followed a stop based on a reasonable suspicion of a window tint violation. Obviously neither party foresaw the approach ultimately taken by the Court of Appeals in *Ochoa III*. In addition, the trial judge overruled his prior letter decision without benefit of argument or an opportunity for either party to present additional evidence that might have informed his decision under *Ochoa III*. We would be speculating that when the trial judge found that "[t]he traffic stop that was conducted on Defendant's vehicle was pretextual," the trial judge necessarily found that the confidential informant was not reliable, and Detective Gallegos did not corroborate predictive details sufficient to rise to the level of reasonable suspicion. Although our appellate determination of reasonable suspicion is based on a de novo review, we review any factual questions under a substantial evidence standard, looking at the evidence in the light most favorable to the prevailing party. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. We take defense counsel at his word that he would have developed a different record under the circumstances. In its reply brief, the State also noted that at the time of the suppression hearing, it could not have known that the Court of Appeals would adopt a new rule regarding pretextual stops and the test that would be applied for such a rule. We also believe that the State should be at liberty to develop whatever record it believes is required by *Ochoa III*. *See Pinnell v. Bd. of Cnty. Comm'rs*, 1999-NMCA-074, ¶ 14, 127 N.M. 452, 982 P.2d 503 (cautioning against engaging in fact-finding at the appellate level when a party has not had a full opportunity to develop the record).

**CONCLUSION**

**{17}** For the foregoing reasons, we reverse the Court of Appeals and remand to the trial court to conduct a hearing on Defendant's motion to suppress consistent with this Opinion.

**{18}** **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**

**RICHARD C. BOSSON, Justice (specially concurring)**

**BOSSON, Justice (specially concurring).**

**{19}** I concur in the remand for the reasons ably set forth in the Court's Opinion. However, I wish to note that this Court has not yet written on the subject of pretextual stops under our state constitution. *State v. Ochoa* is a Court of Appeals opinion in which this Court first granted and then quashed certiorari. 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143, *cert. granted*, 2008-NMCERT-012, 145 N.M. 572, 203 P.3d 103, *and cert. quashed*, 2009-NMCERT-011, 147 N.M. 464, 225 P.3d 794. As one of the dissenting votes in that decision to quash, I continue to believe that *Ochoa* was wrongly decided and that we should follow the Fourth Amendment analysis set forth in *Whren v. United States*, 517 U.S. 806, 814, 116 S.Ct. 1769, 1776 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."), a rare unanimous opinion of that Court. However, at least for now, *Ochoa* is the law of the land within our state borders, and therefore our duty lies in overseeing its fair application to both the state and the accused, a purpose achieved by remand in this case.


_____
**RICHARD C. BOSSON, Justice**


**Topic Index for *State v. Gonzales*, Docket No. 31,891**

| | |
|---|---|
| **CT** | **Constitutional Law** |
| CT-SU | Suppression of Evidence |
| CT-FA | Fourth Amendment |
| | |
| **CA** | **Criminal Procedure** |
| CA-PQ | Pretextual Stop |
| CA-RS | Reasonable Suspicion |
| CA-PA | Probable Cause |
| CA-SZ | Search and Seizure |
| | |
| **EV** | **Evidence** |
| EV-SU | Suppression of  Evidence |