This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                         **NO.  30,813**

**STEVEN DELEON**,

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlick, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Daniel R. Lindsey, P.C.
Daniel R. Lindsey
John L. Collins
Clovis, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

The State appeals from the district court's order granting Defendant's motion to suppress evidence related to driving while intoxicated (DWI) charges. The district court had suppressed the evidence in question after determining that the arresting officer stopped Defendant on a pretextual and constitutionally invalid basis under *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. The State argues that (1) the district court incorrectly applied the law to the facts in concluding that the stop was pretexual; (2) even if the officer stopped Defendant for a traffic infraction with a hunch that Defendant had been driving while intoxicated, the hunch was a product of Defendant's driving and therefore was not pretextual under *Ochoa*; and (3) this Court should overrule *Ochoa* and apply a standard of objective reasonableness to uphold the validity of the stop at issue. We are unpersuaded by the State's arguments and therefore affirm.

## I.    BACKGROUND

In an area near Webb's Watering Hole (the Bar), in Clovis, New Mexico, State Police Officer Telles stopped Defendant's vehicle after observing Defendant's tires cross approximately two inches into the center line when making a right turn on July 31, 2009. As a result of this stop, Defendant was arrested and charged with DWI. Defendant subsequently moved to suppress the evidence associated with the stop, arguing that the stop was pretextual under *Ochoa*, 2009-NMCA-002, ¶ 40. At the suppression hearing, Defendant elicited testimony from Officer Telles which indicated

that he had made stops for minor traffic violations, like the one at issue here, in order to investigate DWIs for which he lacked reasonable suspicion. Defendant also introduced testimony from seven other drivers who testified that they too had been pulled over within the past eighteen months for minor traffic violations after leaving the Bar. In every instance of an alleged pretextual stop by a testifying witness, no traffic citation was issued if no DWI was charged.

The district court found that:

1. The crux of the issue is whether Defendant's stop was pretextual, therefore violative of Article 2, Section 10 of the New Mexico Constitution;

2. An inordinate number of drivers have been pulled over after leaving [the Bar], a local liquor establishment;

3. All drivers were stopped on the basis of a minor traffic violation;

4. All drivers were initially asked "have you been drinking";

5. Defendant established a rebuttable presumption that the stop was pretextual;

6. The burden shifted to Officer Telles to establish that he would have stopped . . . Defendant despite the alleged pretextual circumstances;

7. In every instance of an alleged pretextual stop by a testifying witness[] in this proceeding, if there was no DWI charged, "NO TRAFFIC TICKET WAS ISSUED[.]"

The court concluded that the stop "was not made on a constitutionally valid basis but was pretextual to pursue a hunch that Defendant was driving under the influence[,]"

and dismissed the case. The State now appeals.

## II. DISCUSSION

The State challenges the district court's finding that the stop was pretextual and *Ochoa*'s application to DWI cases. The State also suggests that we overrule *Ochoa*. With regard to suppression orders, we review findings of fact to determine if they are supported by substantial evidence and legal conclusions de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. "In reviewing the application of law to facts, we view the facts in a manner most favorable to the prevailing party." *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509.

A pretextual stop is defined as "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (internal quotation marks and citation omitted). Such stops are impermissible under the New Mexico Constitution. *Id.* ¶ 11. A three-step approach is followed when determining whether a pretextual stop has occurred:

> First, the State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional. Second, if the State satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. Third,

4

if the defendant satisfies the burden, there is a presumption of a pretextual stop, and the State must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive.

*Id.*, ¶ 12 (citing *Ochoa*, 2009-NMCA-002, ¶ 40). We note that facts relevant to the totality of the circumstances include

whether the defendant was arrested for and charged with a crime unrelated to the stop; . . . whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed [after] the stop was made . . .; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Ochoa*, 2009-NMCA-002, ¶ 41.

Here, the inquiry is whether substantial evidence supports the district court's determination that the stop was pretextual under the totality of the circumstances. Officer Telles testified that his sole basis to stop Defendant was his observation of Defendant committing a wide turn violation. But in response to questions posed by defense counsel, Officer Telles stated: "The reason why I make little stops like wide turns and stuff like that is to get the stop, and then I go from there for DWI." In addition, Defendant produced evidence indicating that seven other drivers had been pulled over for minor traffic violations, some drivers multiple times, after leaving the Bar over the last eighteen months. Notably, the first question asked when police

5

officers stopped these patrons and employees was whether the driver had been drinking. And, no ticket was ever issued for the infraction leading to the stop if the driver was found to be sober.

Diandra Sandoval testified that she has been a bartender at the Bar for the past two years. She stated that she was once stopped by state police officer when leaving work at around 1:00 A.M. for making too wide of a turn and crossing into the white line. The first thing the police officer asked her when he stopped her was whether she had been drinking, and the officer subsequently required her to perform field sobriety tests. Upon being found sober, no ticket was issued by the officer for the wide turn.

Neal McCorkel testified that Officer Telles stopped him after leaving the Bar in May 2009 for making too wide of a left turn. Officer Telles pulled out from a motel parking lot or gas station across the street from the Bar and followed McCorkel from the Bar for three blocks before making the stop. Similarly, Jason Jones testified that in March 2009, at around 2:30 A.M., he noticed Officer Telles following him just after he left the Bar until Officer Telles stopped him for speeding. The first question Officer Telles asked Jones was whether he had been drinking.

Julian Castillo testified that in June 2009, he went to the Bar around 1:00 A.M. to pick up a friend. After Castillo pulled out of the Bar's parking lot, Officer Telles, who was parked nearby, began following him. Castillo stated that Officer Telles pulled him over for making an illegally wide left turn and because his license plate

light was out. After stopping Castillo, Officer Telles first asked Castillo whether he had been drinking. Although he had not been drinking, Castillo was subsequently arrested for DWI, and the charges were later dropped.

James Calder worked at the Bar from July 2009 until February 2010 in the evenings. He testified that he saw state police officers parked numerous times in the parking lot or across the street from the Bar. He saw police vehicles driving around the Bar at least once or twice per night. And, he was personally pulled over after leaving work on two different occasions for minor traffic violations, which included changing lanes without signaling. The officers who pulled him over always asked him first whether he had been drinking. Calder was never issued a citation for the minor traffic violations.

Alisha Scholer has been bartending at the Bar for the past two-and-a-half years. She works Tuesday through Saturday from 7:00 P.M. until 1:15 A.M. and has observed state police parking near the Bar. She testified that during her shift, she observes people stopped by state police near the Bar on a daily basis. Six to eight months before she gave her testimony, she too was stopped by a state police officer at approximately 2:00 A.M. while driving some customers from the Bar back to a hotel. Upon departing from the hotel, which was less than a mile from the Bar, she was stopped by a police officer for making too wide of a turn. The first thing the officer asked her when he approached her vehicle was whether she had been drinking.

7

He subsequently required her to do field sobriety tests. She received no citation as a result of the stop.

Finally, Larry Williams has worked at the Bar for the last five years. Williams testified that within the last year, he had been stopped by state police over nine times when leaving work. The reasons for these stops included not staying in the right lane long enough before changing lanes, making too wide of a turn, and having head lights that were not bright enough. These stops typically occurred between 11:30 P.M. and midnight, while Williams was driving customers home. All nine stops were made by state police officers, and Williams never received a traffic citation as a result of any of these stops. Without fail, the first thing the police officers always asked him was whether he had been drinking. The longest an officer followed him before making one of these stops was four to five miles. Williams testified that he has seen state police officers parking near the Bar frequently.

Defendant argued that this pattern of stopping drivers near the Bar for minor traffic violations and initially inquiring whether they had been drinking was again demonstrated by the stop in the present case and is prextual. The State countered that Defendant's evidence of pretext was insufficient and not credible. The State relied solely on Officer Telles's testimony to rebut Defendant's assertion that the stop was pretextual. Officer Telles testified that the Bar was merely along his patrol route, which takes him by the Bar three times per hour, four nights per week. Officer Telles

denied ever parking near the Bar. He stated that he first saw Defendant at a stop light about a mile from the Bar, and maintained that the sole reason for the stop was that Defendant made an illegally wide turn.

Based on the totality of the circumstances before the district court, we conclude that there is substantial evidence to support the district court's finding that the stop was pretextual and that the State has failed to prove that Officer Telles would have made the stop even without Officer Telles's unrelated motive to investigate DWI. First, Officer Telles admitted that his stops involving minor traffic offenses, like wide turns, were pretextual, stating that "[t]he reason why I make little stops like wide turns and stuff like that is to get the stop, and then I go from there for DWI." This testimony establishes that Officer Telles subjectively possessed a motive unrelated to the wide turn to stop Defendant. Since Officer Telles provided no separately valid reason for stopping Defendant, the stop for any other purpose, including DWI, could not have been supported by reasonable suspicion. Second, Defendant's witnesses established a clear pattern of state police officers patrolling the area around the Bar, stopping drivers for minor traffic infractions in the late evening or early morning, first asking the driver whether he or she has been drinking, then only issuing a citation for the minor traffic violation when a DWI arrest was made. Based on this pattern and Officer Telles's admission, there is substantial evidence that Officer Telles used the wide turn violation to pursue his hunch that Defendant was driving while intoxicated,

for which there was no reasonable suspicion or probable cause.

We recognize that Officer Telles denied waiting near the Bar and stopping Defendant for any other reason than to investigate a wide turn. Nonetheless, the district court was entitled to consider the entirety of Officer Telles's testimony, alongside other evidence before the district court, in determining that Defendant's stop was in fact pretextual. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992) (stating that "[i]t was for the [district] court as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay"). We also note that the State failed to produce any testimony that the wide turn, which only resulted in Defendant's tire crossing two inches into the center line, was evidence of the driver's impairment. Therefore, based upon the substantial evidence supporting the district court's determination that this was a pretextual stop, we affirm its ruling in this regard.

To the extent that the State argues that DWIs are related to driving and thus *Ochoa* does not apply, we cannot agree. In *Schuster v. State Department of Taxation & Revenue, Motor Vehicle Division*, 2012-NMSC-025, ¶¶ 32-37, 283 P.3d 288, 291, our Supreme Court applied *Ochoa* to DWIs. Based upon the Supreme Court's application of *Ochoa* in this circumstance, we are bound to conclude that *Ochoa* applies in a DWI context. *See State v. Wilson*, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994) (holding that the Court of Appeals is bound by Supreme Court

10

precedent). Likewise, in *Gonzales*, 2011-NMSC-012, ¶¶ 11-12, our Supreme Court affirmed New Mexico's adoption of the totality of the circumstances test set forth in *Ochoa*. For these reasons, we cannot, as the State requests, overrule *Ochoa* and "apply a standard of objective reasonableness" to evaluate the stop.

## III. CONCLUSION

For the reasons stated above, we affirm the district court.

**IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**