This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 33,690**

**MARISA PAGE**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

The Appellate Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

{1}      Defendant appeals from the district court's judgment affirming the metropolitan

court's denial of her motion to suppress evidence supporting her conviction for driving while intoxicated (DWI). Defendant's motion argued that suppression was required because the arresting officer stopped Defendant for a pretextual reason, which this Court prohibited in *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. The metropolitan court denied Defendant's motion to suppress and convicted Defendant of driving while intoxicated in violation of NMSA 1978, Section 66-8-102 (A) (2010), speeding in violation of NMSA 1978, Section 66-7-301 (2002), and improper display of registration plates in violation of NMSA 1978, Section 66-3-18 (C) (2007).

# I.    BACKGROUND

{2}    On November 3, 2010, Albuquerque Police Department Officer Daniel Carr (Officer Carr) observed Defendant driving above the posted speed limit on Lomas Boulevard. Officer Carr followed Defendant and observed Defendant travel up to fourteen miles per hour above the posted speed limit.[1] Officer Carr also checked Defendant's license plate number against a database and discovered that her registration had expired. Defendant concedes that Officer Carr had probable cause to cite her for speeding and failing to display a validating sticker on her license plate.

---

[1]Officer Carr estimated Defendant's speed by "pac[ing]" her car; in other words, Officer Carr ascertained Defendant's speed by following behind her at a constant distance while observing the speed of his police cruiser.

Defendant also does not dispute that Officer Carr developed probable cause to arrest Defendant for DWI shortly after initiating the stop. Instead, Defendant asserts that Officer Carr knew Defendant had been at a nearby brewery and that he pulled Defendant over for speeding and failing to display a valid registration as a pretext to conduct a DWI investigation.

{3} The metropolitan court heard the following evidence relevant to Defendant's contention. Officer Carr testified that on November 3, 2011, he was "on random patrol" traveling east on Lomas when he initially observed Defendant's vehicle speeding. Officer Carr also testified that the "first time" he observed Defendant's car was when he saw it "speeding at about Lomas and Broadway." Officer Carr said he pulled over Defendant just to the west of the interstate, traveling east bound on Lomas.

{4} On cross-examination, Officer Carr testified that he is a member of the Albuquerque Police Department's DWI unit and was on duty the night in question. Officer Carr stated that in order to remain on the DWI unit, officers are required to meet certain "performance standards," i.e., meeting a quota for DWI arrests. Officer Carr denied knowing that Defendant had left from a nearby brewery and denied patrolling in the area surrounding the brewery in the hopes of catching drunk drivers. However, Officer Carr agreed that when he patrols the Lomas area, "typically the people I stop on Lomas, a lot of them are coming from the establishments downtown,

3

one of them . . . being the . . . brewery."

{5}     Officer Carr also testified that a significant number of traffic stops he conducts result in a verbal warning rather than a ticket. Officer Carr explained that "part of the reason" for this practice is his goal of catching drunk drivers—in other words, he gives warnings when he finds that there is no reason to conclude that a driver is intoxicated. However, Officer Carr also testified that he cites sober drivers when he feels that a verbal warning will not change their behavior. Defendant's attorney attempted to ask Officer Carr whether he would have stopped Defendant in the absence of his investigative remit as a member of the DWI unit, but the metropolitan court sustained the State's objection to that question as calling for speculation.

{6}     Defendant called Steven Webb to testify about his experience being stopped by Officer Carr under similar circumstances. Mr. Webb testified that on a previous occasion, Officer Carr had stopped him after he left the same brewery that Defendant had been at on the night of her arrest. Mr. Webb testified that Officer Carr observed him driving east on Lomas and eventually stopped him in the same area where Defendant was stopped. He also testified that he believed the reason that Officer Carr stopped him was a predetermined desire to conduct a DWI investigation. Mr. Webb also testified that Officer Carr had asked him if he was drinking before requesting to see his license or registration, an apparent deviation from standard operating procedures. Defendant's attorney also proffered the testimony of two other witnesses

4

who would testify that each had been stopped by Officer Carr after leaving the same brewery Defendant and Mr. Webb had left from but that Officer Carr had let them go with a warning after determining that they had not been drinking.

{7}     The metropolitan court judge denied Defendant's motion to suppress and explained its reasoning as follows:

> First of all . . . I understand where you're coming from. . . .[Y]ou're saying Officer Carr's hanging out on this stretch of highway or this stretch of road because he knows there's individuals coming from [the brewery. But t]hat's no different from other DWI officers hanging around near Downtown and making [a] circle of the blocks around Downtown[.] It wouldn't make sense for DWI enforcement for officers to be off in the boondocks away from where individuals travel and to enforce laws out there. I just don't think that makes any sense. And so do I think officers hang out in places they consider "hot spots"? Yes, I do. Do I think they hang out in places where bars are getting out and where . . . there's more bars in the vicinity than the rest of the area? Yes I do. Do I think that the officers then pull everybody over just based off the fact that they think everybody pulled out of a bar or is coming from a bar? No. I think each officer is out there, he's looking for individuals that are breaking the law, traffic violations, he's forming his reasonable suspicion and he's pulling that individual over. I think in this case that's exactly what Officer Carr did. I think that he's riding up and down Lomas, or he's in that general area, he sees somebody who by [Defendant]'s own agreement, he has reasonable suspicion to pull over[.] He then pulls that person over, and you know he makes the decision based off of his conversation with her that he needs to further a DWI investigation. Do I think he should have let her go at that point in time? If he felt that he needed to further his investigation, then certainly I don't think he should have let her go. He needed to make sure, one, that she was safe to be let go, and to be on the streets.[2]

---

[2]The metropolitan court judge also stated on the record that her decision would be the same even if she heard testimony in line with Defendant's proffer that Officer

5

**{8}** Defendant appealed to the district court, which affirmed, holding that a " 'totality of the circumstances' demonstrates no indication Officer Carr had [a] motive unrelated to [investigating] a traffic violation" when he stopped Defendant.

## II. STANDARD OF REVIEW

**{9}** The Bernalillo County Metropolitan Court exercises combined statutory jurisdiction over county and municipal offenses. NMSA 1978, § 34-8A-3(A)(1) (2001). Part of this jurisdiction includes acting as "court of record for criminal actions involving driving while under the influence of intoxicating liquors or drugs[.]" NMSA 1978, § 34-8A-6(C) (1993). Any party aggrieved by the metropolitan court's judgment in such cases may appeal the court's judgment to the district court of the county in which the metropolitan court is located (in this case, Bernalillo County). *Id.* Since the metropolitan court was the court of record in this case, the district court "acts as a typical appellate court reviewing the record of the lower court's trial for legal error." *State v. Foster*, 2003-NMCA-099, ¶ 9, 134 N.M. 224, 75 P.3d 824. The district court's judgment disposing of the appeal is reviewed in this court in the same manner as the district court reviewed the metropolitan court's judgment. Rule 5-

---

Carr had pulled over other individuals who had recently driven away from the same brewery and let them go with verbal warnings.

826(M) NMRA.[3]

{10} Whether a metropolitan court correctly grants or denies a motion to suppress (and whether the district court correctly upheld or reversed the metropolitan court's order) is a mixed question of law and fact. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. The district court (and this Court) reviews the metropolitan court's findings of fact for a substantial basis in the record. *Id.* However, we defer to the metropolitan court's resolution of conflicting evidence and evaluation of witness credibility since it "has the best vantage from which to resolve [those] questions." *Id.* "Therefore, we review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *Id.*

## III. DISCUSSION

{11} Article II, Section 10 of the New Mexico Constitution prohibits police officers from initiating traffic stops or other seizures as a pretext for starting or continuing an

---

[3]The State argues that this Court lacks jurisdiction to review a district court's disposition of an appeal from municipal court, citing *State v. Armijo*, 2014-NMCA-013, 316 P.3d 902, *cert. granted*, 2013-NMCERT-012, 321 P.3d 127. A case that at the time this case was briefed was pending before our Supreme Court. However, in August 2015, our Supreme Court entered a dispositional order concluding that this Court "has secondary appellate jurisdiction over DWI and domestic violence convictions of the metropolitan court[.]" It is conceivable that the a precedential opinion the Supreme Court intends to release "at a later date" may change this conclusion, but we think the Court's dispositional order is sufficient for our purposes to reject the State's argument summarily.

investigation into unrelated criminal activity. *Schuster v. State of N.M. Taxation & Revenue Dep't*, 2012-NMSC-025, ¶ 32, 283 P.3d 288. A pretextual traffic stop is defined as "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (internal quotation marks and citation omitted). A three-step approach is followed when determining whether a pretextual stop has occurred:

> First, the [s]tate has the burden to establish reasonable suspicion [or probable cause] to stop the motorist. If the [s]tate fails in its burden, the stop is unconstitutional. Second, if the [s]tate satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. Third, if the defendant satisfies the burden, there is a presumption of a pretextual stop, and the [s]tate must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive.

*Id.* ¶ 12 (citing *Ochoa*, 2009-NMCA-002, ¶ 40). We note that facts relevant to the totality of the circumstances include

> whether the defendant was arrested for and charged with a crime unrelated to the stop; . . . whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop; how long after the alleged suspicion arose or violation was committed [after] the stop was made . . .; the conduct, demeanor, and statements of the officer during

8

the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Ochoa*, 2009-NMCA-002, ¶ 41.

{12} Defendant argues that the metropolitan court and the district court both "erroneously constru[ed] *Ochoa* to allow evidence to be admissible based on only the first step of the three-part *Ochoa* analysis[.]" Defendant argues that the metropolitan court and the district court both erred by conflating the presence or absence of reasonable suspicion with the totality of the circumstances determination of whether a stop was initiated based on an unrelated pretext.

{13} We disagree. The metropolitan court heard evidence and made express findings as to Officer Carr's subjective intent: "I think each officer is . . . looking for individuals that are breaking the law. . . . I think in this case that's exactly what Officer Carr did. I think that he's riding . . . up and down Lomas, or he's in that general area, he sees somebody who by defense's own agreement, he has reasonable suspicion to pull over. . . . [h]e then pulls that person over[.]" We disagree with Defendant that the metropolitan court was single-mindedly focused on whether or not Officer Carr had reasonable suspicion to conduct a traffic stop. We understand the metropolitan court's statement from the bench to contain separate conclusions: (1) Officer Carr had reasonable suspicion or probable cause to believe Defendant had violated the traffic code (thereby satisfying step one of the *Ochoa* analysis), and (2)

9

any pretextual motive arising from Officer Carr's questionable actions at other traffic stops and his participation as a member of the DWI unit were sufficiently overcome in this case by the totality of the circumstances—establishing that the subjective purpose of the stop was to address Defendant's undisputed violations of the traffic code, rather than a pretext to investigate if she was driving while intoxicated. Effectively, the metropolitan court found that Defendant's fact-specific *Ochoa* challenge failed at steps two and three because the State's evidence ultimately established that the totality of the circumstances overcame Defendant's evidence of any pattern or practice of pretextual behavior by members of the DWI unit who specifically targeted vehicles observed leaving parking lots near downtown nightclubs and breweries.

{14} Defendant challenges the sufficiency of the evidence underlying the metropolitan court's ultimate conclusion, but we find Defendant's arguments unpersuasive. To be sure, Defendant elicited sufficient testimony from Officer Carr and Mr. Webb for the metropolitan court to find that Officer Carr had a valid and "unrelated motive" to stop Defendant's vehicle. *See Ochoa*, 2009-NMCA-002, ¶ 40. Defendant points to Officer Carr's testimony that catching DWI offenders"part[ly]" explains his practice of giving verbal warnings to motorists he stops but who he ultimately determines not to be intoxicated. But Officer Carr also explained that he does cite sober motorists who he concludes will not improve their driving upon

10

receiving a warning. Mr. Webb testified that Officer Carr asked him if he had been drinking before asking to see his registration, in apparent deviation from standard practices during routine investigations of traffic code violations. While this testimony supports an inference that Officer Carr had a practice of conducting pretextual traffic stops, Defendant's own testimony that Officer Carr asked her for her license and registration before asking her whether she had been drinking supports a contrary inference, that Mr. Webb's stop (assuming it was pretextual) was not conducted in the same manner as Defendant's stop.

{15}     So too with Defendant's assertion of pretext that Officer Carr stakes out popular bars, pulls over motorists leaving from them for minor traffic offenses, and lets those who are sober go with a verbal warning. This assertion finds support through plausible inferences from Mr. Webb's testimony and Defendant's attorney's proffer that Officer Carr had targeted at least two other individuals who had recently left the same brewery Defendant had patronized. But the record also permitted the metropolitan court judge to credit Officer Carr's own testimony that he was "on random patrol" in the downtown area on the night in question and did not observe Defendant leaving a bar before he saw her speeding on Lomas. In sum, while there was substantial record evidence to factually establish that Officer Carr's decision to stop Defendant was pretextual, there was also substantial evidence that any pretextual practices that may have been utilized by the DWI unit in other circumstances was overcome by the

11

totality of circumstances in this case. Since we defer to the metropolitan court's findings of fact on appeal and view the record as a whole in a light most favorable to the prevailing party in the metropolitan court, we, like the district court, reject Defendant's challenge to the metropolitan court's finding that the stop was not pretextual based upon the totality of these circumstances.

{16} Defendant next argues that the district court erroneously upheld the metropolitan court's denial of Defendant's motion to suppress by focusing on the presence or absence of reasonable suspicion and ignoring evidence that Officer Carr was motivated by an impermissible pretext when he stopped Defendant. But any error in the district court's understanding of *Ochoa* is immaterial to the ultimate question of whether the metropolitan court should have granted Defendant's motion to suppress, a question resolved by the district court exclusively based upon evidence presented in metropolitan court. In any event, we disagree with Defendant's characterization of the district court's ruling. The district court reviewed the metropolitan court ruling to determine whether there was any "indication Officer Carr had [a] motive unrelated to [investigating] a traffic violation[,]" citing *Ochoa*, 2009-NMCA-002, ¶ 41, which recites a non-exhaustive list of factors relevant to determining whether the totality of circumstances support a finding of pretext.

{17} After doing so, the district court found that the following facts demonstrated Officer Carr did not stop Defendant for pretextual reasons: (1) Defendant was charged

12

with the offenses for which she was stopped (speeding and expired registration); (2) according to Defendant's recollection, Officer Carr asked her for her license and registration before inquiring into whether she had been drinking, which distinguished her encounter from Mr. Webb's; (3) Officer Carr drove a marked car, wore his uniform, and testified that part of his job responsibilities include enforcing traffic laws; (4) Officer Carr testified that he was not in a position to see which street Defendant came from and did not know she had recently left a brewery; and (5) Officer Carr followed Defendant for only a short period of time.

{18} The core of Defendant's argument is that the traffic infractions that gave rise to the stop—speeding and failing to display a valid registration—were "minor infractions" that did not give Officer Carr any basis to conclude that she was driving while intoxicated. Defendant cites *Gonzales*, and *State v. Alderete*, 2011-NMCA-055, 149 N.M. 799, 255 P.3d 377, arguing that Officer Carr's testimony that he has a motive and incentive to catch drunk drivers as a general matter automatically shifts the burden to the State to prove that Officer Carr would have made the stop in this case in the absence of his motive and incentive to catch drunk drivers.

{19} But the State is only required to overcome a presumption of pretext when the defendant demonstrates that the totality of the circumstances indicates that a specific stop was initiated for pretextual reasons. *See Gonzales*, 2011-NMSC-012, ¶ 12 (stating "the defendant may still establish that the seizure was unreasonable by *proving that*

*the totality of the circumstances indicates* the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion" (emphasis added)); *Alderete*, 2011-NMCA-055, ¶¶ 11-12 (providing "*an otherwise pretextual stop* will only be invalidated if the underlying motive is not supported by reasonable suspicion or probable cause" (emphasis added)). For purposes of our analysis, we can accept without deciding Defendant's allegation of pretext—that in certain factual scenarios, the DWI unit has employed the pretextual practice of following vehicles leaving parking lots located near downtown nightclubs and breweries for the express purpose of stopping the vehicle and conducting a DWI investigation without reasonable suspicion that the driver is intoxicated. Even assuming that such has taken place, Defendant does not present facts in this case that fit into that pretextual scenario.

{20} Here, the metropolitan court found that Officer Carr's participation in any pretextual downtown practices by the DWI unit was overcome by evidence that he did not follow Defendant from any downtown parking location, and he did in fact observe and properly stop Defendant for speeding and failure to display a valid registration. Once Officer Carr's testimony was determined to be credible, it provided the metropolitan court with ample evidence to decide that Defendant's stop neither fit within the pretextual scenario being alleged nor met the final steps required under *Ochoa*. *See* 2009-NMCA-002, ¶ 40. As the metropolitan court noted, the fact that Officer Carr has a special duty to investigate DWI offenses and that he was patrolling

14

the downtown area on the night of Defendant's arrest did not require the metropolitan court to disregard Officer Carr's testimony that he was not motivated by pretext when he stopped Defendant. In sum, despite an allegedly pretextual policy within the DWI unit assigned to the downtown Albuquerque area, we cannot conclude that the metropolitan court erred when it determined that the totality of the evidence, on balance, established that Officer Carr stopped Defendant's vehicle for legitimate traffic violations and not based upon the improper pretextual scenario alleged by Defendant.

**III.    CONCLUSION**

{**21**}    We affirm the district court.

{**22**}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**LINDA M. VANZI, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

15