This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                          **No.   34,442**

**QUALYNN SHINDLEDECKER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

{1}    Defendant Qualynn Shindledecker (Defendant) appeals from an order of conditional discharge and probationary supervision, entered after he pleaded guilty to possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(D) (2005, amended 2011) (current version at Section 30-31-23(E)), pursuant to a conditional plea agreement. Defendant reserved one issue, challenging the district court's denial of his motion to suppress for an alleged pretextual traffic stop. Because the district court failed to enter findings of fact or conclusions of law and it is unclear to this Court what the district court relied on in concluding that the stop was not pretextual, we reverse and remand to the district court with instructions to enter findings to support its ruling on Defendant's motion to suppress.

**BACKGROUND**

{2}    The facts relevant to Defendant's motion to suppress were developed via the testimony of Officer Timothy Brown at the hearing on Defendant's motion to suppress. Officer Brown was on patrol in Bloomfield, New Mexico when he observed a vehicle drive down an alley in an area that had been the subject of citizen complaints due to high drug activity "in the alley at night." He noticed that the vehicle did not have working license plate lights and that the holder around the license plate partially obscured the registration sticker. *See* NMSA 1978, § 66-3-805(C) (1978) (requiring that there be a white light that illuminates the rear registration plate on a vehicle); NMSA 1978, § 66-3-18(A) (2007) (requiring, among other things, that a registration

plate "be maintained free from foreign material and in a condition to be clearly legible"). Officer Brown followed the vehicle for approximately two blocks before initiating a traffic stop, noting that there was no good place to pull someone over before then. Officer Brown further testified that as part of his duties that night, he was looking for suspicious activity in that area. However, he also testified that with respect to Defendant's vehicle, he did not see it leave any suspected drug houses or otherwise receive any information that would lead him to believe that Defendant was involved in suspicious activity. Based on the two noted traffic violations, Officer Brown testified that he initiated a traffic stop.

{3}     Upon coming into contact with Defendant, Officer Brown explained to Defendant that he stopped him because his light was not working and because the license plate holder was covering the bottom of the registration sticker. He then asked Defendant what he was doing. Defendant explained that he was trying to find a girl's house, but upon additional questioning, was unable to provide the girl's last name or tell the officer where she lived. As a result of his interaction with Defendant, Officer Brown testified that he became suspicious that Defendant was involved in drug activity. Officer Brown then asked Defendant for his license, registration, and insurance papers, and when Defendant moved to get those materials, Officer Brown noticed a screwdriver in Defendant's lap and a knife mounted to the side of the console, within Defendant's reach. At that point, Officer Brown asked Defendant to

3

step out of his vehicle based on safety concerns. He also asked whether there were any other weapons in the vehicle and asked for consent to search it. Defendant consented to the search, and in the glove box of Defendant's vehicle, Officer Brown discovered marijuana, pieces of Brillo, and a small clear plastic container with a white powdery substance in it. As a result, Defendant was charged with (1) possession of a controlled substance, (2) possession of drug paraphernalia, and (3) possession of marijuana. He was not cited for any traffic code violations.

{4}     Defendant filed a motion to suppress, arguing that the stop was pretextual under the standard set forth in *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. At the end of the hearing on Defendant's motion, the district court ruled orally from the bench, saying, "I find that it is not a pretextual stop. The motion is denied. The State will submit an appropriate order. The defense also may submit an appropriate order for the record within ten days." There was, however, no order entered denying the motion, and the district court did not enter any findings of fact or conclusions of law. Defendant subsequently entered into a conditional plea agreement pursuant to which he pleaded guilty to one count of possession of a controlled substance, contrary to Section 30-31-23(D). The plea agreement reserved "the right to appeal [the] order denying motion to suppress of May 13, 2014." This appeal followed.

**Pretextual Stops Under *Ochoa***

4

{6}    In *Ochoa*, this Court concluded that pretextual stops violate New Mexico's Constitution under Article II, Section 10. *Ochoa*, 2009-NMCA-002, ¶ 1. We clarified that a pretextual traffic stop occurs when "a police officer is stopping the driver, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving." *Id.* ¶ 16 (internal quotation marks omitted). In rejecting federal authority on pretextual stops, we acknowledged that, while there may be a technical violation of the traffic law that would give rise to reasonable suspicion or probable cause to conduct a traffic stop, the actual reason that a police officer conducts a stop may lack legal sufficiency. *Id.* We held that a district court should therefore determine whether a stop is "pretextual subterfuge" by considering the totality of the circumstances, judging the credibility of witnesses, weighing the evidence, and ultimately, making the decision whether to exclude evidence depending on the objective and subjective reasonableness of the stop at its inception. *Id.* ¶ 39. "[T]he officer's intent is determined like any other fact, based on the evidence presented" and consideration of various factors. *Id.* The district court is required to employ a three-step approach in determining whether a pretextual stop has occurred.

> First, the [s]tate has the burden to establish reasonable suspicion to stop the motorist. If the [s]tate fails in its burden, the stop is unconstitutional. Second, if the [s]tate satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. Third, if the

5

> defendant satisfies the burden, there is a presumption of a pretextual stop, and the [s]tate must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive.

*State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (citations omitted) (citing *Ochoa*, 2009-NMCA-002, ¶ 40). Factors relevant in analyzing the totality of the circumstances may include:

> whether the defendant was arrested for and charged with a crime unrelated to the stop; the officer's compliance or non-compliance with standard police practices; whether the officer was in an unmarked car or was not in uniform; whether patrolling or enforcement of the traffic code were among the officer's typical employment duties; whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed the stop was made, how many officers were present for the stop; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Ochoa*, 2009-NMCA-002, ¶ 41. We noted in *Ochoa* that the foregoing list is not intended to be an exhaustive list; rather, it supplies some of the factors relevant to the pretext inquiry. *Id.*

**DISCUSSION**

{7}      In this case, it appears that several of the *Ochoa* factors weigh in favor of finding that the traffic stop was pretextual. There appears to be no dispute that under the first step, because Defendant committed a traffic code violation, Officer Brown

6

had reasonable suspicion to conduct the stop. Under the second step, we repeat many of the facts recited above. We point out that Officer Brown testified that he was on patrol in an area where there had been a request for heightened officer presence due to the complaints of drug activity "in the alley at night" when he observed Defendant's vehicle drive into an alley. *See id.* ¶ 41 (listing one factor as "whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense"). He further testified that as part of his duties that night, he was looking for suspicious activity in the area. *See id.* Officer Brown noted that the vehicle did not have working license plate lights and that the holder around the license plate partially obscured the registration sticker. While Officer Brown testified that it is his practice to initiate a traffic stop for these kinds of violations, we note that this sort of violation is not one where there is an obvious need to conduct a stop for traffic safety. *See id.* (listing one factor as "whether the objective reason articulated for the stop was necessary for the protection of traffic safety"); *id.* ¶ 35 ("Police officers may enforce any and all traffic laws, so long as it is done with reasonable suspicion and in good faith *for that purpose*."). We also observe that Officer Brown began asking Defendant questions unrelated to the traffic stop very soon after coming into contact with him. *See id.* ¶ 41. (listing a factor as "the manner of the stop," which includes "the conduct, demeanor, and statements of the officer during the stop"). Upon questioning by the State, Officer Brown discussed that he was

7

trained to ask certain questions as part of his "drug interdiction training" when he suspected drug activity, and his questioning of Defendant seemed consistent with that training. *See id.* Officer Brown also testified that his interaction with Defendant led him to believe that Defendant was in fact involved in drug activity. *See id.* Finally, we note that Defendant was not cited for the traffic violations that served as the basis for the stop, but was charged with three drug-related crimes. *See id.* (listing one factor as "whether the defendant was arrested for and charged with a crime unrelated to the stop"). Under these circumstances, it is unclear what the district court relied on in determining that the stop was not pretextual—particularly because there were no findings entered in this case. We, again, point out that the factors set forth in *Ochoa* are not exhaustive, *id.*, and so, there could be a sound basis for determining that the stop was not pretextual. However, because the district court failed to articulate its rationale, we cannot meaningfully review its decision in this case.

{8} Because the determination of pretext is highly fact dependent, we rely heavily on the district court to weigh the evidence presented by the respective parties and reach a determination. *See State v. Gonzales*, 1999-NMCA-027, ¶ 13, 126 N.M. 742, 975 P.2d 355 ("The vantage of the appellate bench is a poor one from which to assess credibility and perform other components of the fact-finding task."). The district court has the responsibility to look at the totality of the circumstances to determine the subjective intent of the officer and the objective reasonableness of his actions in order

8

to make the ultimate decision of whether the stop was "pretextual subterfuge." *Ochoa*, 2009-NMCA-002, ¶ 39; *see id.* ¶ 38 (explaining that rejection of the pretext doctrine "would be an abdication of our judicial responsibility to meaningfully review police action, ferret out police perjury, weigh the evidence, and guard our citizens' privacy rights . . . [and] would in effect legitimize a charade, a mockery of the legal justifications we recognize for permitting the most common of police intrusions"). Without findings, it is difficult for this Court to ascertain the basis for the district court's decision—particularly in a case like this where there appear to be many factors that would support a determination that the stop was pretextual, and yet, there is a determination that it was not. We conclude that remand is appropriate.

{9} In reaching this conclusion, we acknowledge that there is no requirement in the criminal context that a district court set forth the factual basis for its decision, and in fact, courts often do not do so when deciding criminal suppression issues. *Gonzales*, 1999-NMCA-027, ¶¶ 9-11. Typically, we would resort to employing presumptions—"indulg[ing] in all reasonable presumptions in support of the district court's ruling." *Id.* ¶ 15. However, in a case like this, we are unable to simply apply presumptions to determine whether the *Ochoa* standard was properly applied. Although we only have the uncontradicted testimony of Officer Brown, the pretext inquiry is such that it requires the district court to assess witness credibility to determine intent to reach the ultimate conclusion as to the real reason for the stop. *See*

9

*Ochoa*, 2009-NMCA-002, ¶ 39. This sort of determination, by its very nature, requires the district court to question the real motive behind stopping an individual, and where many of the factors weigh in favor of finding pretext, we need the district court to justify its decision that it was not pretextual by entering findings.

**Expansion of the Stop**

{10} Lastly, we address Defendant's argument that the officer impermissibly expanded the scope of the stop by asking questions unrelated to the initial reason for the stop. The State asserts that Defendant waived this argument because he failed to raise it below.

{11} As we noted previously, Defendant entered into a conditional plea agreement wherein he reserved "the right to appeal [the] order denying motion to suppress of May 13, 2014." While Defendant's motion to suppress focuses on arguing that the stop was pretextual, it also asserts that the stop was unconstitutional because "questions asked by police officers during the course of a stop must be either reasonably related to the reason for the stop or supported by reasonable suspicion." Whether an officer asks questions unrelated to the articulated reason for a stop is certainly something that should be pointed out as part of a pretext argument, and it also raises an independent issue that could result in suppression. *See State v. Leyva*, 2011-NMSC-009, ¶¶ 10, 55, 149 N.M. 435, 250 P.3d 861 ("Article II, Section 10 [of the New Mexico Constitution] requires that all questions asked during the

investigation of a traffic stop be reasonably related to the initial reason for the stop. Unrelated questions are permissible when supported by independent reasonable suspicion, for reasons of officer safety, or if the interaction has developed into a consensual encounter."). Although the focus of the arguments at the suppression hearing was whether the stop was pretextual, it appears that the issue was adequately raised in Defendant's written motion and the relevant facts—which in this case overlap with those related to pretext—were developed below. *See State v. Gomez*, 1997-NMSC-006, ¶ 29, 122 N.M. 777, 932 P.2d 1.

> [The appellate courts] require parties to assert the legal principle upon which their claims are based and to develop the facts in the [district] court primarily for two reasons: (1) to alert the [district] court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector.

*Id.* Because the district court did not enter an order denying the motion, we are unsure whether the court considered this issue, and consequently, whether its oral ruling denying Defendant's motion was intended to also address Defendant's secondary basis for suppression. We can conceive of nothing that would preclude the district court from ruling on this issue on remand, and we instruct the court to do so.

**CONCLUSION**

{12}     We reverse and remand to the district court with instructions to rule on Defendant's full motion to suppress and enter findings supporting its decision.

11

{13}  **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**